W. L. WALLS, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25297.    Promulgated January 30, 1931.

*Charles P. Swindler, Esq.*, for the petitioner.
*P. A. Bayer, Esq.*, for the respondent.

**OPINION.**

SMITH: The principal question presented by this proceeding is whether the petitioner is liable to income tax in respect of the fair market value of the petitioner's interest in the Cahill contract with the Midwest Refining Co., which was assigned to him by Cahill as compensation for legal services rendered. The petitioner was of the opinion that he received no income upon the assignment from Cahill. He was of the opinion that he was required to return as taxable

income only the amounts of cash which might be paid to him by the Midwest Refining Co. under the contract. He returned the amounts thus received in the years 1924 to 1928, inclusive.

The respondent, on the other hand, contends that the petitioner realized taxable income in 1923 to the amount of the fair market value of the interest in the Cahill contract received by him in that year, and to the extent of the distributions made to him by the Midwest Refining Co. under the contract in 1923.

. Section 213 of the Revenue Act of 1921 provides in part as follows:

That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, * * * or gains or profits and income derived from any source whatever. * * *

The record shows that the petitioner received the assignment of the interest in question "for a good and valuable consideration to-wit: professional services rendered." We interpret this statement of fact contained in the petition and admitted in the answer to mean that Cahill discharged his obligation to the petitioner for services rendered by assigning to him an interest in the working agreement and that the petitioner received the assignment in payment for such services. No contention is made to the contrary. We apprehend that the situation might be different if the evidence showed that the petitioner did not receive the assignment in payment of his claim against Cahill. In *United States* v. *Christine Oil & Gas Co.*, 269 Fed. 458, it was said, after referring to *Edwards* v. *Keith*, 231 Fed. 110:

What is there said of unpaid services applies with equal force to unpaid purchase money. If a seller accepts the notes of third persons in absolute payment, the rule would be different. But where the effect of the transaction is a mere promise to pay, and not an actual payment, it can not be said to be income, until it has been actually received, and is not subject to be taxed as such until its actual receipt.

The interest assigned was a property right, a chose in action, and had a market value to the petitioner of $16,500 at the date of assignment and throughout the year 1923. The vice president of the Midwest Refining Co. deposed that the Midwest Refining Co. was willing and ready to purchase all of the outstanding one-eighth interests under the Cahill contract at a uniform price of $16,500 each, less any distributions which might have been made on the interest. In other words, the Midwest Refining Co. was not willing to pay more than a total of $16,500 for each one-eighth interest. The petitioner was well aware of the fact that the Midwest Refining Co. was willing and ready to purchase his interest in 1923 at a price of $16,500. In a letter addressed to the Income Tax Unit, relative

to the deficiency which had been determined against the petitioner for 1923, the petitioner stated:

This ⅛th of ⅓rd interest had an estimated value of $16,500 and I have no doubt of my being able to sell it for such sum but I do not choose to sell my interest I prefer to hold it and take my proportion of the net results of the operating under the lease over the period of five years, the time for which the lease runs. * * *

This interest has additional value in its renewal features which would be foreclosed to me if I sold in 1923. The renewal values are of course speculative, as was the earning capacity of the interest in the first instance.

Article 33 of Regulations 62, promulgated pursuant to the provisions of the Revenue Act of 1921, provides in part as follows:

Where services are paid for with something other than money, the fair market value, if readily realizable, of the thing taken in payment is the amount to be included as income. If the services were rendered at a stipulated price, in the absence of evidence to the contrary such price will be presumed to be the fair value of the compensation received. Compensation paid an employee of a corporation in its stock is to be treated as if the corporation sold the stock for its market value and paid the employee in cash. * * *

It can not be doubted that if the compensation paid to the petitioner had been in the form of cash or of real estate or of shares of stock of a corporation or other personal property, the amount of the cash received or the cash value of the other property received would have constituted taxable income. In *Charles R. Johnson*, 8 B. T. A. 992, we said:

It is well settled that capital stock of a corporation received by an individual as compensation for services rendered is taxable as income only to the extent of its fair market value at the time received.

See also *William J. Conlen*, 1 B. T. A. 472; *James R. Lister*, 3. B. T. A. 475; *Roscoe H. Aldrich*, 3 B. T. A. 911; *Benedict Crowell*, 21 B. T. A. 849. The assigned interest in the Cahill contract received by the petitioner was property. Cf. *J. V. Leydig*, 15 B. T. A. 124, affirmed in *Leydig v. Commissioner*, 43 Fed. (2d) 494. It was certainly something of exchangeable value received by the petitioner. We can see no valid reason for differentiating property of the kind received by the petitioner from shares of stock which might have been received by him as compensation for services rendered. In either case the petitioner would have actually realized a gain or profit in 1923 equal to the amount of cash which could have been received for it had he chosen to sell it in 1923. The Commissioner's determination that the petitioner received taxable income of $16,500 upon the receipt of the assigned interest is sustained.

At the hearing of this proceeding the petition was amended so as to raise an alternative issue relating to an amortization or depletion allowance in the event that we approved the respondent's action in giving to the assigned interest a value for income tax purposes and including that value in petitioner's taxable income for 1923.

So far as the record discloses the petitioner had no property right in the lease given by the State of Wyoming to the Midwest Refining Co. He was not a party to the lease. He had, however, an interest in a working agreement between the Midwest Refining Co. and T. J. Cahill. A witness for the Government, the vice president of the Midwest Refining Co., was asked to state the distinction or difference between a royalty interest in a lease and a working interest of the character involved in this proceeding. He replied:

A royalty interest represents a percentage of the gross income of the lease; a working interest represents a percentage of the net income of the lease.

He further stated that a royalty interest was less speculative than a working interest, for the reason that the holder of a royalty interest would have income if any oil or other mineral subject to the royalty payment was produced; but that a holder of a working interest would not have any income unless the operations resulted profitably. Since the petitioner had no royalty interest in the lease given by the State to the Midwest Refining Co., we are of the opinion that he had no depletable interest in that lease.

The assigned interest in the working agreement, which was received by the petitioner, did, however, at the date of receipt have a fair market value of $16,500. With the lapse of time this interest would be exhausted. Its definite or certain life was only five years. The petitioner received certain profits from the assigned interest, and these profits constituted a part of the petitioner's gross income for income tax purposes. The question for our immediate consideration is whether petitioner's interest in the working agreement is subject to any exhaustion allowance.

Section 214 (a) of the Revenue Act of 1921 provides in part:

That in computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. \* \* \*

The Commissioner provided, in article 163 of Regulations 62, that:

Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. \* \* \*

The interest of the petitioner in the working agreement was a property right and is comprehended by the all-inclusive term "property," used in section 214 (a) (8) of the taxing statute. But was it property "used in the trade or business" within the meaning of the statute? We are of the opinion that it was. It was used in a trade or business to the same extent that an office building which is owned by a professional man and from which he receives the rents is used in the trade or business. We think no question could arise but that in such a situation the recipient of the rents is entitled to

deduct from gross income received a reasonable amount for the depreciation of the office building, and we have held in *Tracy V. Buckwalter*, 20 B. T. A. 1005, that an individual owning a patent, from which he derives taxable royalties, is entitled to deduct from his gross income a reasonable amount for the exhaustion of the patent from which he derives his income. The same principle is applicable here.

In the circumstances of the instant proceeding we are of the opinion that the exhaustion deduction for 1923 is a pro rata part of $16,500, the cash value of the assigned interest to the petitioner in 1923, exhausted over the five-year period, the definite life of the interest.

The final point for our consideration is whether the petitioner is liable to a 25 per cent penalty for delinquency in filing his return for 1923. Section 3176, Revised Statutes, as amended, provides for the assessment and collection of such a penalty where a return is filed delinquently and no reasonable excuse is given for such delinquency, or where the return is made up for him by the proper officer of the Government. The evidence of record shows that the petitioner had a taxable income of approximately $16,000 for the year 1923 without any reference to any income from the receipt of the assigned interest as such. No reasonable ground has been shown for failure to file a return. The respondent's action in imposing a penalty for failure to file the return is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*