WILLIS R. DEARING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIS R. DEARING, EXECUTOR, ESTATE OF R. H. DEARING TRUST ESTATE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIS R. DEARING, EXECUTOR, ESTATE OF R. H. DEARING, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIS R. DEARING, EXECUTOR, ESTATE OF ROY E. DEARING, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. R. H. DEARING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. WILLIS R. DEARING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 84192, 84193, 84194, 84195, 84196, 84197.

Promulgated November 11, 1937.

*W. M. Van Nort, Esq.*, for the petitioners.
*Ralph E. Smith, Esq.*, for the respondent.

844

OPINION.

HILL: Our first question is the correctness of the respondent's action in including in gross income the fair market value of the oil payment contracts.

We had this same question before us in the recent case of *Edwards Drilling Co.*, 35 B. T. A. 341, where we held that the fair market value of future oil payment contracts is not accruable as taxable income. We said in part:

In *E. F. Simms*, 28 B. T. A. 988, rights under oil leases were sold for cash and notes, together with a right to 400,000 barrels of oil produced from the property, if the land produced such an amount, and an overriding royalty on all oil produced. We concluded that the rights reserved to future payments in oil and money were contingent in character and, following the principle of *Burnet* v. *Logan*, 283 U. S. 404, did not represent property received or amounts accruable for the purpose of determining gain realized from the sale.

Here the petitioner's rights to receive the consideration for drilling the wells were contingent upon the happening of events which could not be foretold during the taxable period with any fair degree of certainty because of the nature of the mineral from the sale of which the money was to be paid. As we said in *E. F. Simms, supra*, "A 'gusher' of today may be a mere 'pumper' or even a dry hole tomorrow." In addition to this usual uncertainty that an oil well will continue to be a producer, the petitioner's rights to payment were subject to the possibility that the Railroad Commission of Texas would decrease the daily production of the wells. The owners of the wells were not at any time in 1931 under a definite obligation to pay, since no liability was to come into existence until oil produced and saved had been marketed. The promise of the owners of the wells to pay for the drilling thereof was, therefore, contingent. Throughout the taxable period it was doubtful whether the petitioner would ever receive its consideration. The risk was always present.

The fact that the rights had a fair market value does not of itself require that the amount thereof be accrued as taxable income. *Bedell* v. *Commissioner*, 30 Fed. (2d) 622; *Commissioner* v. *Darnell, Inc.*, 60 Fed. (2d) 82; *Teck Hobbs*.

26 B. T. A. 241; *Woods* v. *Lewellyn, supra; Workman* v. *Commissioner, supra.*
See *E. F. Simms, supra.*

Under the facts in this case, we are of the opinion, and so hold, that only the cash actually received by the petitioner in 1931 for drilling the wells constitutes taxable income. Accordingly, it was error for the respondent to increase gross income by an amount for the contingent rights to future payments under the drilling contracts.

See also *Teck Hobbs*, 26 B. T. A. 241; *Commissioner* v. *Moore*, 48 Fed. (2d) 526; *Commissioner* v. *Garber*, 50 Fed. (2d) 588; *Bedell* v. *Commissioner*, 30 Fed. (2d) 622.

It is urged upon us that the fair market value of the contracts was stipulated and can not now be questioned, but such stipulation does not necessarily make them taxable. As we said in the *Edwards Drilling Co.* case, *supra*, "The fact that the rights had a fair market value does not of itself require that the amount thereof be accrued as taxable income."

Respondent relies mainly on the case of *W. L. Walls*, 21 B. T. A. 1417; affd., 60 Fed. (2d) 347, where a lawyer accepted certain oil payments extending over several years as a fee. The Commissioner fixed a fair market value of $16,500 for the contract and included it in the taxpayer's income for the year in which the contract was made. His action was approved by the Board and the Circuit Court. The facts in that case, however, were considerably different from those in the instant cases. In that case Walls was the owner of an one-eighth interest. The Midway Co. had bought five one-eighth interests at $16,500 each and stood ready to pay Walls a like sum for his interest, but Walls preferred to retain his oil payments. These facts, we think, differentiate that case from the instant cases, rendering it of no value as a precedent.

We hold that the respondent erred in including the fair market value of the oil payment contracts in the income of the partnership for 1932. Such payments are taxable as, if, and when received.

During the taxable year there was received on account of oil payments the sum of $172,385.21. Petitioners did not return any of this for taxation on the theory they were entitled to the return of costs of drilling before making any return of profit for taxation. Of these oil payment collections during the taxable year the respondent included $68,032.56, representing the proportionate difference between the contract price and the fair market value of the contracts. In view of our holding that the fair market value of the oil payment contracts may not be included in the income of the partnership, it results that the actions of both petitioners and the respondent were erroneous. The entire collections of $172,385.21 are includable in the gross income of the partnership but this should be credited by the $68,032.56 already included therein and proper deduction be made for depletion.

The remaining question is that of depletion on the oil payments which respondent disallowed.

Under the terms of the contracts in question it is clear to us that the petitioners are entitled to a deduction for depletion. They had an economic interest in the oil in place, which was depleted by extraction. In *Palmer* v. *Bender*, 287 U. S. 551, the Court said:

* * * It will be observed that the statute directs that reasonable allowance for depletion be made as a deduction in computing net taxable income, "in the case of * * * oil and gas wells, * * * according to the peculiar conditions in each case." The allowance to the taxpayer is not restricted by the words of the statute to cases of any particular class or to any special form of legal interest in the oil well. It is true that under article 215 of Treasury Regulations 62 the lessor of an oil or gas well is entitled to a depletion allowance upon the bonus and royalties received from the lessee. See *Murphy Oil Company* v. *Burnet, supra*. But there is nothing in the statute or regulations which confines depletion allowances to those who are technically lessors. The concluding sentence of the section that "In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and the lessee" presupposes that the deductions may be allowed in other cases. The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital.

\* \* \* \* \* \* \*

In the present case the two partnerships acquired by the leases to them, complete legal control of the oil in place. Even though legal ownership of it, in a technical sense, remained in their lessor, they, as lessees, nevertheless acquired an economic interest in it which represented their capital investment and was subject to depletion under the statute. *Lynch* v. *Halworth-Stephens Co.*, supra. When the two lessees transferred their operating rights to the two oil companies, whether they became technical sublessors or not, they retained, by their stipulations for royalties, an economic interest in the oil, in place, identical with that of a lessor. *Burnet* v. *Harmel; Bankers' Pocahontas Coal Company* v. *Burnet*, supra. Thus throughout their changing relationships with respect to the properties, the oil in the ground was a reservoir of capital investment of the several parties, all of whom, the original lessors, the two partnerships, and their transferees, were entitled to share in the oil produced. Production and sale of the oil would result in its depletion and also in a return of capital investment to the parties according to their respective interests. The loss or destruction of the oil at any time from the date of the leases until complete extraction would have resulted in loss to the partnerships. Such an interest is, we think, included within the meaning and purpose of the statute permitting deduction in the case of oil and gas wells of a reasonable allowance for depletion according to the peculiar conditions in each case.

The statute makes effective the legislative policy, favoring the discoverer of oil, by valuing his capital investment for purposes of depletion at the date of the discovery rather than at its original cost. The benefit of it accrues to the discoverer if he operates the well as owner or lessee, or if he leases it to another. It would be an anomaly if that policy were to be defeated

and all benefit of the depletion allowance withheld because he chose to secure the return of his capital investment by stipulating for a share of the oil produced from the discovered well through operation by another.

See also *Chester Addison Jones*, 31 B. T. A. 55; 82 Fed. (2d) 329, and *William Fleming*, 31 B. T. A. 623; 82 Fed. (2d) 324.

In the recent case of *Thomas* v. *Perkins*, 301 U. S. 655, the United States Supreme Court held that any one having an economic interest in oil and gas in place is entitled to the statutory percentage depletion.

Under section 114 (b) (3) of the Revenue Act of 1932 petitioners are entitled to depletion of 27½ per centum of the oil payments during the taxable year.

In the *Edwards Drilling Co.* case, *supra*, it was held that the entire cost of drilling wells was deductible as an ordinary and necessary business expense in the year in which incurred.

No such claim is made in this case, and the question of depletion was not presented in the *Edwards* case. In view of the decisions of the Supreme Court in *Thomas* v. *Perkins*, *supra*, and *Palmer* v. *Bender*, *supra*, we think the correct rule is for the petitioners to recoup their expenditures by depletion.

In Docket No. 84193 respondent determined a 25 percent delinquency penalty, pursuant to the provisions of section 291 of the Revenue Act of 1932, for failure to make and file a return within the time prescribed by law. Subsequently, in 1935, a return was prepared by respondent, pursuant to section 3176 of the U. S. Revised Statutes, as amended. Petitioner has offered no evidence to show that the failure to file a return within time was due to reasonable cause and not to willful neglect. Respondent's determination is, therefore, approved, but the amount of the penalty will be recomputed on the basis of the tax finally redetermined to be due under Rule 50.

*Decision will be entered under Rule 50.*