ROBERT J. BOUDREAU AND RUTH E. BOUDREAU, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILMER J. BOUDREAU AND OPAL BOUDREAU, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101398, 101399. Promulgated October 21, 1941.

*Ed. J. de Verges, Esq.*, for the petitioners.
*S. B. Anderson, Esq.*, for the respondent.

OPINION.

MURDOCK: Section 115 (c) of the Revenue Act of 1934 provides that amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and the gain or loss to the distributee resulting from such exchange shall be determined under section 111. The latter section provides that the gain shall be the excess of the amount realized over the basis, and "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." Section 112 provides: "Upon the sale or exchange of property, the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section." None of the exceptions has any application in this case. Section 112 (b) (1), upon which the petitioner places some reliance, by its express terms does not cover an exchange of stock. *Matthias W. Wildschutz*, 22 B. T. A. 1140; affd., 60 Fed. (2d) 869; *R. & M. Property Co.*, 27 B. T. A. 436.

The petitioners in this case were the owners of stock of the Jim Oil Co. which had cost them $50 per share. There was a complete and final liquidation of the Jim Oil Co. in the taxable year. Rights to oil payments solely from a fraction of the oil produced under a lease were distributed to the petitioners in that liquidation. That property must "be treated as in full payment in exchange for the stock." The gain is the excess of the fair market value of that property over the basis of $50 per share. *Commissioner* v. *Kellogg*, 119 Fed. (2d) 115; *Vonnegut Hardware Co.*, 28 B. T. A. 784; *Anna L. Dirksen, Executrix*, 24 B. T. A. 1152; *Joseph A. Mudd*, 14 B. T. A. 1417. See also *Louis F. Timmerman*, 42 B. T. A. 188. All of that gain must be recognized under section 112 (a). *Hellmich* v. *Hellman*, 276 U. S. 233; *Rollestone Corporation*, 38 B. T. A. 1093; *Sam Weisberger*, 29 B. T. A. 83. See *Holmby Corporation* v. *Commissioner*, 83 Fed. (2d) 548. The

Commissioner has followed the statute precisely, has determined that the property received had a fair market value at the time it was received of $380.748 per unit, has computed the gain of each of the petitioners, and has included that gain in income.

The petitioners attack the determination of the Commissioner upon the ground that the property which they received had no ascertainable fair market value at the time it was received, since their rights were contingent upon the production of oil from the leased premises, a circumstance which rendered impossible the ascertainment of the fair market value of the property. The case thus presents a question of fact—Had the property the fair market value determined by the Commissioner, or was its fair market value so contingent and uncertain as to be unascertainable for the purpose of the provisions of the statute referred to above? The factual determination of the Commissioner is presumed to be correct and evidence is required to overcome that presumption. There is evidence in this record to support the determination of the Commissioner. The lease contained a number of good producing wells. One hundred and fifty thousand dollars in cash had been paid for the lease and the purchaser had agreed to pay a large additional amount from production. Over $100,000 of the $450,000 to be paid out of production had actually been paid prior to January 2, 1935. The lease was producing on January 2, 1935. Other stockholders, within a few days after the distribution, sold their rights for $380.748 per unit.

What is the evidence in opposition to the determination of the Commissioner? One of the petitioners testified that he could not have estimated on January 2, 1935, just how much oil would be produced under the lease or how valuable it would be. There is always uncertainty as to how much oil will be produced from a lease and we take judicial notice, even in the absence of proof, that there was some uncertainty as to whether the production from this lease after January 2, 1935, would be sufficient to pay all of the balance due. The only evidence in the record from which any estimate might be made of the probabilities is the actual payments made from production. That evidence tends to support the determination of the Commissioner. The petitioner received payments of almost $4,000 during 1935 and said that production ran about the same during 1936 and 1937, increased about 80 percent during 1938, and thereafter fell off about 80 percent. This would indicate that he had received almost full payment by the close of 1938. The petitioner did not say whether or not he had any opinion as to the fair market value of the rights or show that he was particularly qualified to give such an opinion if he had one, although it appears that he had some familiarity with the oil business. No evidence was offered to show the

extent of the market for the shares on or about January 2, 1935. It does not appear that the petitioners wanted to sell their interests, that they ever tried to sell, or that they investigated the market. They regarded their interests as of value and continued to hold them. Their pleadings indicate that they thought the interests were of greater value than the price actually obtained by the others. This record does not justify a holding that the rights had no fair market value at the time they were distributed or that their fair market value was less than the amount determined by the Commissioner. Since the evidence supports rather than rebuts the determination of the Commissioner, we must follow the statute and hold that a taxable gain was realized in 1933.

The foregoing discussion completely disposes of this case unless the Supreme Court has held in *Burnet* v. *Logan*, 283 U. S. 404 that, as a matter of law, future payments, contingent upon the uncertain production of mineral from a natural deposit of unknown extent, can have no fair market value for the purpose of computing gain from the disposition of property. If that was the holding in the *Logan* case, then the result reached herein is erroneous and the petitioners had no gain in the taxable year from the disposition of their shares. We conclude, however, that the Supreme Court in the *Logan* case merely decided that the future payments had no fair market value so far as the evidence presented in that case disclosed. The uncertainty attaching to payments to be made from the production of mineral is no greater and no more difficult to make allowance for in a problem of valuation than many other contingencies. The problem of valuing a patent, for example, might be just as difficult or even more difficult. The present case presents a question of fact which must be decided upon the evidence in this case.

The *Logan* case has been cited by the Board in a number of cases, but none of those cases involved a situation just like the one here. *Edwards Drilling Co.*, 35 B. T. A. 341; affd., 95 Fed. (2d) 719, dealt with the accrual, as income, of compensation for services and thus depended upon wholly different provisions and principles from those involved herein. The following cases may be similarly distinguished: *United States* v. *Anderson*, 269 U. S. 422; *Willis R. Dearing*, 36 B. T. A. 843; affd., 102 Fed. (2d) 91; that part of *Cook Drilling Co.*, 38 B. T. A. 291, which dealt with compensation for services; and *Rocky Mountain Development Co.*, 38 B. T. A. 1303. See, *contra*, *Walls* v. *Commissioner*, 60 Fed. (2d) 347, affirming 21 B. T. A. 1417. Cases where a taxpayer has exchanged a part of his interest in an oil lease but has reserved to himself oil payments from his original lease, are different from this case, in which the petitioner surrendered stock and received an oil payment out of property in which he had had no previous direct legal interest. *Kay Kimbell*, 41 B. T. A. 940;

*Columbia Oil & Gas Co.*, 41 B. T. A. 38; *E. F. Simms*, 28 B. T. A. 988; *Teck Hobbs*, 26 B. T. A. 241, and one issue in *Cook Drilling Co.* Since none of the foregoing cases are just like this case, they are not deemed authority for the decision in this case.

The respondent makes no claim for an increased deficiency on the basis of his error in concluding that Robert J. Boudreau was the owner of only 28 shares, whereas the record shows that he was the owner of 30 shares.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

TURNER, concurring: In my opinion the conclusion reached in the instant case can not be reconciled with the decision of certain of the issues in the *Willis R. Dearing, Rocky Mountain Development Co., Kay Kimbell*, and *Edwards Drilling Co. cases.* I desire to note my concurrence, however, because of my belief that the conclusion here reached is the only possible conclusion under sections 115 (c), 112 (a), and 111 of the statute. The cases mentioned are in my opinion in direct conflict with the plain language of sections 111 and 112 (a) and should be overruled. In all of those cases the fair market values of the oil payment contracts were either agreed to or were determinable as a fact, and I can not believe that *Burnet* v. *Logan*, 283 U. S. 404, stands for the proposition that as a matter of law an interest in an ore body can have no fair market value in cases where such fair market value can be or has been established as a fact.

---

BLACK, dissenting: I dissent from the views expressed in the majority opinion because I think they are directly opposed to the views which we expressed in some of the very cases which the opinion endeavors to distinguish. Among these cases are: *Edwards Drilling Co.*, 35 B. T. A. 341; affd., 95 Fed. (2d) 719; *Willis R. Dearing*, 36 B. T. A. 843; affd., 102 Fed. (2d) 91; and *Rocky Mountain Development Co.*, 38 B. T. A. 1303.

The essential holding of the above cases, in so far as they affected oil payment contracts similar to those involved in the instant case, was this: These oil payment contracts provide for contingent future payments out of the proceeds of oil if, as, and when produced and saved from the properties to which they apply, and the taxpayer's right to receive such future oil payments is wholly contingent upon the happening of future events which, because indeterminable, may never occur. Therefore, the Board held in the above cited cases and other similar cases that such contingent oil payment contracts will

not be treated as income even though they do have a definite ascertainable fair market value. Cf. *Bedell* v. *Commissioner*, 30 Fed. (2d) 622. Our decisions to which I have referred above were based upon *Burnet* v. *Logan*, 283 U. S. 404, and it seems to me they were correctly determined to be controlled by that case.

I will concede that the holding in the instant case, to the effect that the exchange of petitioners' stock in the Jim Oil Co. for the oil payment contracts is a taxable exchange because the oil payment contracts had a fair market value, is distinguishable from such cases as *Columbia Oil & Gas Co.*, 41 B. T. A. 38; affd., 118 Fed. (2d) 459. In the latter case the taxpayer, during 1933, sold eight oil and gas leases, together with the tangible well equipment in connection therewith, for a cash consideration of $550,000, but reserved the first oil, if, as, and when produced from certain fractional parts of each lease as an overriding royalty until certain maximum amounts would be received therefrom, the total maximum amounts being $350,000. We held that in computing the gain on the sale no part of the reserved oil payments should be considered as an amount *realized* from the sale.

In the instant case the Jim Oil Co. was the one which made the sale of the leases and reserved the oil payments and a comparable situation to what we had in *Columbia Oil & Gas Co.*, case, *supra*, would be to have before us the Jim Oil Co. with the question to determine being as to what gain the Jim Oil Co. realized in the sale of the leases. That question we do not have before us. Therefore, I concede that the instant case is distinguishable on its facts from *Columbia Oil & Gas Co.*, and that line of cases.

However, for reasons I have stated in the earlier part of this dissent, I do not think the instant case is distinguishable in principle from such cases as the *Edwards Drilling Co.* and *Willis R. Dearing*. Therefore, I respectfully record my dissent from the conclusions reached in the majority opinion.

ARUNDELL and LEECH agree with this dissent.

---

TYSON, dissenting: I dissent. Although it refrains from expressly doing so, the opinion of the majority in effect overrules the holdings of the Board, on the point involved, in *Edwards Drilling Co.*, 35 B. T. A. 341; affd., 95 Fed. (2d) 719; *Willis R. Dearing*, 36 B. T. A. 843; affd., 102 Fed. (2d) 91; *Cook Drilling Co.*, 38 B. T. A. 291; *Rocky Mountain Development Co.*, 38 B. T. A. 1303; and *Kay Kimbell*, 41 B. T. A. 940. In lieu of expressly overruling these cases, the opinion distinguishes all of them, except the *Kimbell* case, from the one here. The distinction made is based upon stated differences

between the facts in the cited cases and the instant one; those differences being that in the cited cases the rights to future oil payments arose out of their acquisition as compensation for services, while in the instant case the rights to such payments were acquired through a distribution in liquidation. Such distinction is based solely upon differing ways and methods by which the rights to oil payments were acquired and bears no material distinguishing relation to the bare question presented in the cited cases and here, i. e., shall rights to future oil payments, by whatever method acquired, be treated as a factor in income even though they have a market value?

Moreover, the distinction consisting of such differences in fact, as above stated, if material, does not exist between the facts in the instant case and those in the *Rocky Mountain Development Co.* and *Kay Kimbell* cases, since, in both of those cases, the rights to future oil payments arose out of the acquisition of such rights through sale or exchange, whereas here, the rights were acquired in a distribution in liquidation, the equivalent, for the tax purposes here involved, of a sale or exchange. The issue as to whether the rights as to future oil payments are to be treated as factors in income was directly presented in both of the last mentioned cases.

The holdings of the Board in all the above cases were based upon *Burnet* v. *Logan*, 283 U. S. 404, as controlling, and, I think, correctly so.

LEECH agrees with this dissent.