ROCKY MOUNTAIN OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 79421. Promulgated July 23, 1937.

*Harry C. Weeks, Esq.*, for the petitioner.
*Byron M. Coon, Esq.*, and *W. G. Cullen, Esq.*, for the respondent.

LEECH: This proceeding seeks redetermination of a deficiency in income tax in the sum of $593.28, determined against petitioner for the calendar year 1932. The petitioner assigns as error that respondent in determining the deficiency (a) increased its reported income by an amount constituting the proceeds of oil production to which the original lessors of the property were entitled under the terms of the leases and which was paid over to these lessors, and (b) determined the limitation upon depletion allowable to petitioner in the amount of 50 percent of net income from the property by deducting from gross income intangible drilling costs and overhead expenses.

Petitioner is a Texas corporation which owns and operates two oil and gas leases known as the "S. S. Cook 10 acre lease" and the "S. S. Cook 3⅓ acre lease." These leases were treated as a unit by respondent for the purpose of computing depletion. Petitioner acquired both of the leases in question by assignments which in each instance reserved to the assignor the right to certain amounts payable from the proceeds of oil, if and when produced. In the case of the 10-acre lease, the assignment provided for payment of $30,000 to the assignors, payable out of ¼ of ⅞ of the first oil, as, if, and when produced, this payment to be made direct to these parties by the purchaser of such oil. As to the 3⅓-acre lease, the assignment provided for a payment of $10,000 to the assignors out of ¼ of ⅞ of the first oil produced and saved, the assignor expressly reserving to himself ¼ of ⅞ of all oil from said premises until the $10,000 provided for should be paid. The properties as held and operated in the taxable year by petitioner were subject to the terms and conditions, above set out, and contained in the original assignments.

In accordance with the general practice existing in such cases in the oil business, so-called division orders were presented to the pipe line company purchasing the oil produced from petitioner's wells during the taxable year. These division orders set out the proportion of the proceeds of the oil purchased to which the assignors of the leases were entitled and payments were duly made by the pipe line company direct to such assignors in that year in the total sum of $9,191.92.

Petitioner in making its return for the calendar year 1932 did not include in its income any part of the $9,191.92 paid direct to the original assignors by the pipe line company, but in determining the deficiency respondent included this amount in petitioner's income and also included it in determining net income of petitioner from the

wells for the purpose of computing the limitation upon depletion allowable under section 114 (b) (3) of the Revenue Act of 1932.[1]

Petitioner drilled a well upon the property in 1932 and expended in this operation $14,479.54 for intangible drilling and development costs. This amount it deducted as expense under the Commissioner's regulations in determining its net income for that year. It also in that year expended $825 in the way of salary to its president, $792.24 for interest, and $59.52 for office expense.

No question is raised by the respondent as to the allowability of these deductions in computing taxable income but in computing the aforesaid 50 percent limitation upon allowable depletion he also reduced gross income from production by the amounts of these expenditures.

With respect to the first issue, the taxability of petitioner upon the $9,191.92 received from oil production by the assignors of the two leases, it appears that respondent relies on *Comar Oil Co.* v. *Burnet,* 64 Fed. (2d) 965. However, since the decision of that case this question has been presented directly, or the principle controlling it has been passed upon, in a number of decisions by the courts in which a different conclusion is reached, and the question appears to have been definitely settled by the recent decision of the Supreme Court in *Thomas* v. *Perkins,* 301 U. S. 655. See also *Commissioner* v. *Fleming,* 82 Fed. (2d) 324; *Commissioner* v. *Elliott Petroleum Co.,* 82 Fed. (2d) 193; *Alexander* v. *Continental Petroleum Co.,* 63 Fed. (2d) 927; *Commissioner* v. *Williams,* 82 Fed. (2d) 328; *Commissioner* v. *O'Donnell,* 90 Fed. (2d) 907; *Elbe Oil Land Development Co.* v. *Commissioner,* 91 Fed. (2d) 127; *Chester Addison Jones,* 31 B. T. A. 55; affd., 82 Fed. (2d) 329. In these cases there was presented the question of whether or not taxpayers who occupied the position of the assignors in the present cases were entitled to depletion upon the proceeds of oil production paid over to them under assignments similar to the ones here involved. In these cases the courts held these recipients of oil payments to be entitled to the deduction of depletion since, under the rule laid down in *Palmer* v. *Bender,* 287 U. S. 551, they had a retained economic interest in the leased properties.

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

\* \* \* \* \* \* \*

(b) BASIS FOR DEPLETION.—

\* \* \* \* \* \* \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

In other words, the courts in these cases hold that the recipients of oil payments, under the conditions here existing, received income from the property. This conclusion resolves the question in the present case, because, if these payments constituted income from the property to the assignors they can not also constitute income from the property to petitioner. If these payments were income from the property to these petitioners there could be no question but that they would be entitled to depletion. We would have a condition, then, of 27½ percent depletion deduction allowed to two parties upon the same income, a result not permitted under the act. *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312. On authority of the cited cases we conclude that the $9,191.92, in question, did not constitute gross income to petitioner.

The second issue is the correctness of respondent's action in deducting intangible drilling costs and overhead expenses in computing net income from production for the purpose of applying the 50 percent limitation upon allowable depletion. The deduction of intangible drilling costs by respondent in computing net operating income was disapproved in the decision of the court in *Ambassador Petroleum Co.* v. *Commissioner*, 81 Fed. (2d) 474; reversing 28 B. T. A. 868. The Board has accepted the view taken by the court in that case. *Mountain Producers Corporation*, 34 B. T. A. 409. It is true that both of the above cases arose under the 1926 Revenue Act, whereas, the question here arises under the Revenue Act of 1932. But the Commissioner has, under the 1932 Act, provided by his Regulations,[2] that the net income from property for the purpose of the 50 percent limitation on depletion must be computed by the deduction of the amount of development expense if such expense had been taken as a deduction in the determination of taxable net income.

In *Wilshire Oil Co.*, 35 B. T. A. 450, the question was presented whether the rule adopted in *Ambassador Petroleum Co.* v. *Commissioner*, *supra*, and *Mountain Producers Corporation*, *supra*, applied under the Revenue Act of 1928, in view of the fact that under the latter act respondent (by article 221 (i) of Regulations 74) had

---

[2] [Regulations 77.] ART. 221. *Depletion of mines, oil and gas wells, other natural deposits, and timber; depreciation of improvements.—* * * *

* * * * * *

(h) "Net income of the taxpayer (computed without allowance for depletion) from the property," as used in section 114 (b) (2), (3), and (4) and articles 221 to 248, inclusive, means the "gross income from the property" as defined in paragraph (g) less the allowable deductions attributable to the mineral property upon which the depletion is claimed and the allowable deductions attributable to the processes listed in paragraph (g) in so far as they relate to the product of such property, including overhead and operating expenses, development costs properly charged to expense, depreciation, taxes, losses sustained, etc., but excluding any allowance for depletion. * * *

specifically provided, as here, that development costs charged to expense by the taxpayer and reflected in computing net taxable income should be deducted in computing net income for the purpose of applying the 50 percent limitation upon depletion. In that case the Board held that since the statutory construction of the provisions of the 1926 and 1928 Revenue Acts with respect to depletion were the same, respondent, by regulations, could not change the rule for the computation of net income under the later act for the purpose of computing the limitation upon depletion. That conclusion disposes of the issue here because the controlling act and regulations are similar to the one there involved.

This brings us to the propriety of respondent's deduction of overhead expenses in computing net income for the purposes of the limitation on depletion. This question is not answered by the decision of the court in *Ambassador Petroleum Co.* v. *Commissioner*, *supra*, on the deductibility here, of intangible drilling costs. The conclusion there is upon the basis that no part of the latter costs constituted operating expenses. This is not necessarily true of overhead costs such as those present. Administrative salaries, interest, and office expenses are segregated from general operating expenses merely because of the fact that they are compensation for services performed or expenditures made with respect to all of the activities of the corporation. However, such portion of this overhead expense as is properly allocable to the activities of the corporation which have to do with the production of oil, are just as much an expense of that production as pay rolls of the laborers engaged in the work.

Respondent, by his deduction here, has allocated some, at least, of this expense to production. Petitioner does not attack the allocation as improper but merely raises the broad question that no part of the expense can constitute an operating cost. With his contention we do not agree. The record does not disclose that the allocation to expenses of operation, as made by respondent, is in error. In fact, it is indicated that petitioner's activities in this year were limited to the operation of these two wells except for the drilling of one well. Whether any of the services or expenses included in the overhead cost apply to such drilling and development, we do not know. Petitioner in proving merely the amount and general character of the expenditures has not shown the action of respondent to be in error. Upon this point the respondent is sustained.

*Judgment will be entered under Rule 50.*