I. RUDMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROSE RUDMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85886, 85887. Promulgated November 3, 1937.

---

*Harry C. Weeks, Esq.*, for the petitioners.

*Frank M. Thompson, Esq.*, and *R. B. Canon, Esq.*, for the respondent.

[black redaction bar]

## OPINION.

Hill: The first issue for decision here is whether respondent erred in including in petitioners' gross income certain oil payments made directly to their assignors or predecessors in title from oil and gas leases operated by them. During the taxable year petitioners operated two oil and gas leases, known as the Cook lease and the Long lease, respectively. The fractions of the oil reserved by petitioners' assignors, or their predecessors in title, were delivered to the pipe line companies and the proceeds paid directly to them by the purchasers of the oil, the amount so paid in the taxable year to the holder of the oil payment on the Cook lease being $1,762.70, and on the Long lease $5,201.97. In determining the deficiencies, respondent included these amounts in petitioners' gross income. Such action was erroneous. The amounts in question should be excluded from petitioners' gross income, and should also be excluded in computing the percentage depletion deduction allowable to petitioners. *Thomas* v. *Perkins*, 301 U. S. 655; *Rocky Mountain Oil Co.*, 36 B. T. A. 365, 367.

The second and third issues will be considered together. During the taxable year petitioners caused a well to be drilled on the Long lease, and in their income tax returns claimed a deduction of $14,344.05 as intangible drilling and development expense. The deficiencies in controversy here were determined by respondent in accordance with a revenue agent's report, approved by him. In such report the deduction mentioned was allowed in the amount of $13,367.45. The amount of $976.60 thereby disallowed consisted of two items, the first being $360 representing cost of cement used in the well drilled on the Long lease, which petitioners charged to drilling and development expense and included in the deduction of $14,344.05, but which respondent capitalized and added to equipment cost; the second item being $616.60 representing unpaid balance of oil payment at December 31, 1933, referred to in the revenue agent's report as "given in payment for footage contract for drilling well." The latter adjustment is not questioned by the petitioners, but they contend that the $360 expended for cement used in the well is properly a part of drilling and development expense, and that respondent erred in disallowing such item.

In determining the deficiencies, respondent also deducted the sum of $13,367.45 as operating expense in computing the net income from the property, 50 percent of which is a limitation upon the amount allowable for percentage depletion under the provisions of section 114 (b) (3) of the Revenue Act of 1932. Petitioners assail this action of the respondent as erroneous, and their contention must be sustained. Whether or not the sum of $13,367.45 is properly deductible from gross income in determining the taxable net income of petitioners, it is not an operating expense, and, therefore, in any event, is not deductible in computing the limitation on the percentage depletion allowance. Respondent's action on this point is reversed. *Rocky Mountain Oil Co., supra; Wilshire Oil Co.*, 35 B. T. A. 450; *Mountain Producers Corporation*, 34 B. T. A. 409; *Ambassador Petroleum Co.* v. *Commissioner*, 81 Fed. (2d) 474.

While respondent originally allowed the sum of $13,367.45 as a deduction from gross income on account of drilling and development expense, by amended answer respondent now alleges that such action was erroneous, in that the amount allowed represented the cost to petitioners "of the drilling of a completed well under a 'turn-key' job contract and was improperly allowed as a deduction." And respondent formally makes claim for the increased deficiency which would result from the correction of the alleged error.

Decision of the question raised by respondent's amended answer depends on whether the contract for the drilling of the well on the Long lease was a "turnkey" contract, or provided for the drilling on a footage basis. The consideration paid under a "turnkey" contract represents an expenditure for the acquisition of a capital asset, and is not a deductible expense. *Old Farmers Oil Co.*, 12 B. T. A. 203; *Fort Ring Oil & Gas Co.*, 30 B..T. A. 307; *C. W. Titus, Inc.*, 32 B. T. A. 1222; *O-W-R Oil Co.*, 35 B. T. A. 452. If the contract under consideration was not a "turnkey" contract, the amount in controversy is deductible as expense pursuant to the option exercised by petitioners under article 236 of respondent's Regulations 77, Revenue Act of 1932, the pertinent provisions of which are set out in the margin.[1]

---

[1] (a) Items chargeable to capital or to expense at taxpayer's option.

(1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * * In general, this option applies only to expenditures for those drilling and development items which in themselves do not have a salvage value. For the purpose of this option labor, fuel, repairs, hauling, supplies, etc., are not considered as having a salvage value even though used in connection with the installation of physical property which has a salvage value. Drilling and development costs shall not be excepted from the option merely because they are incurred under a contract providing for the drilling of a well to an agreed depth, or depths, at an agreed price per foot or other unit of measurement. * * *

A "turnkey" contract is one which requires the drilling contractor to furnish all casing, fuel, and material and to turn over a completed well for a stipulated price. *Old Farmers Oil Co., supra; C. W. Titus, Inc., supra*, at pages 1226, 1228. In *Fort Ring Oil & Gas Co., supra*, the contracts designated as "turnkey" contracts required a "completed well, with equipment furnished by the contracting driller, in place and ready for production." A footage contract is one which provides for payment "at so much per foot of well drilled."

The contract for the drilling of the well on the Long lease, involved in the instant case, we think clearly was not a "turnkey" contract, but should be classified as a "footage" contract. The contractors did not agree to furnish all labor, material, and equipment and to turn over a completed well for a stipulated price. They agreed only to furnish all labor, a complete drilling rig, and necessary equipment for drilling the well, together with accident insurance, and to drill the well to a depth of 2,950 feet, for which they were to be paid a total consideration of $11,000, consisting of $4,000 in cash, and $7,000 in oil if, as, and when produced, saved, and marketed. Thus, the consideration for the drilling of the well was slightly less than $3.73 per foot, and the contract was no less a "footage" contract because it recited a total stipulated lump sum consideration for drilling to a depth of 2,950 feet instead of an agreed price per foot.

Moreover, it appears from the record that petitioners furnished the fuel and water, labor and trucking, and cement and fittings, and made other expenditures in the nature of intangible expenses, amounting to $3,344.05; they obviously also furnished all casing and other equipment required to complete the well and put it into operation.

In our opinion, respondent's original action, in treating the contract as a footage contract and in allowing the disputed deduction in determining the deficiencies, was proper. The claim set forth in the amended answer for increased deficiency is, therefore, denied.

This leaves for examination only the question whether respondent erred in disallowing, as a part of the deduction for intangible drilling and development expense, the sum of $360 representing the cost of cement used in the well drilled on the Long lease. Respondent's regulations, quoted *supra*, provide for charging to expense, at the taxpayer's option, "expenditures for those drilling and development items which in themselves do not have a salvage value." The evidence before us shows that the cement used in the Long well may properly be regarded as a drilling and development item, and that after installation it did not have, and could not possibly have had, any salvage value. The amount in controversy is, therefore, deductible. Respondent's action is reversed.

*Judgment will be entered under Rule 50.*