RALPH W. CREWS, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66701, 66702, 66703, 66718, 66766, 66767.
Promulgated February 23, 1938.

*Albert L. McRill, Esq.,* for the petitioners.
*John H. Pigg, Esq.,* for the respondent.

## OPINION.

HILL: These proceedings are before us on mandates from the Circuit Court of Appeals in the following circumstances: The cases of *Ralph W. Crews,* No. 66701; *Robert E. Crews,* No. 66702; *Amy Tresner,* No. 66703; *Mary Willis,* No. 66718; and *Charles Crews,* No. 66766, were first considered by us, after hearing, and a report promulgated May 2, 1934, at 30 B. T. A. 615. The issue submitted and decided involved the amount of depletion allowance to which each petitioner was entitled for the taxable year 1930. The same cases were recon-

---

[1] Proceedings of the following petitioners are consolidated herewith: Robert E. Crews; Amy Tresner; Mary Willis; Charles Crews; and Everett J. Crews.

sidered and a supplemental opinion promulgated September 19, 1934, at 31 B. T. A. 187.

The case of *Everett J. Crews*, No. 66767, was considered by us and a report promulgated September 18, 1935, at 33 B. T. A. 36. This case was submitted on the record made in the former proceedings above mentioned, and in that connection it was found necessary to make certain modifications of our prior findings of fact and opinion. As a result of such modifications, our former decisions in the cases first above referred to were reconsidered and modified to bring them into harmony with the facts and conclusions reached in the case of *Everett J. Crews*, No. 66767. To that end a supplemental opinion was promulgated November 12, 1935, at 33 B. T. A. 441.

In *Everett J. Crews, supra*, after referring to section 114 (b) (3) of the Revenue Act of 1928, which provides that the allowance for depletion of oil and gas wells shall be 27½ per centum of the gross income from the property, but not exceeding 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, we considered the evidence in reference to the gross income from the property involved, and, with respect to the determination of the net income, then said:

The determination of the net income of the heirs from the property involves a consideration of the items that are to be deducted from gross income from the property in order to arrive at the net income therefrom. The parties have stipulated that the cost of drilling, equipping, and operating wells and certain miscellaneous expenses applicable to the production of oil and gas amounted to $849,544.37, and they are in agreement that this amount constitutes a proper deduction in determining the net income from the property. We, therefore, hold this amount is an allowable deduction in determining the net income of the heirs from the property.

Subsequent to our decisions above mentioned, petitions for review in all of the cases were filed with the United States Circuit Court of Appeals for the Tenth Circuit, which court, by mandates filed herein May 12, 1937, reversed our decisions, and remanded the cases for further proceedings in accordance with the opinion of the court rendered March 29, 1937 (89 Fed. (2d) 412). In its opinion the court said:

Here the petitioners received in 1930 a one-eighth royalty on the production during that year, $355,000.00 in cash in the nature of a bonus or advanced royalty * * * $849,544.37 discharged of the obligation to indemnify the bank, and an agreement to receive the funds in escrow which agreement was worthless. The amount of the one-eighth royalty plus the sums of $849,544.37 and $355,000.00 constituted their gross income from the property in 1930.

The depletion allowance should be 27½ per cent of $1,204,544.37 plus the amount of the one-eighth royalty received in 1930 or 50 per cent of the net income of the petitioners from the property, whichever amount is the lesser.

Reversed and remanded to the Board for further proceedings in accordance with this opinion.

On June 28, 1937, petitioners filed a motion that the cases be set down for hearing for the purpose of receiving additional evidence alleged to be necessary under the court's mandate in order to determine the correct "net income from the property, the allowable depletion, and the further deductions allowable to the taxpayers." On brief in support of their motion, petitioners point out that the sum of $849,544.37 which the parties originally agreed constituted a proper deduction from gross income, and which the Board allowed as such, in determining the net income from the property for the purpose of applying the limitation on the percentage depletion allowance, included amounts representing development and equipment costs; and that deduction of the development and equipment costs in computing net income from the property was subsequently held to be erroneous in *Ambassador Petroleum Co.* v. *Commissioner* (C. C. A., 9th Cir., Feb. 5, 1936), 81 Fed. (2d) 474, and *Wilshire Oil Co.* (Feb. 10, 1937), 35 B. T. A. 450.

By order dated September 28, 1937, petitioner's motion was granted in part, and the cases set for hearing for the purpose of receiving (1) the additional evidence indicated in such motion, and (2) proof to establish the amount of the one-eighth royalty received by petitioners on the production during 1930. At the hearing on November 24, 1937, the parties filed a stipulation that the amounts of the one-eighth royalty received by petitioners on the production during 1930 are as follows:

| | | | |
|---|---|---|---|
| Ralph W. Crews | $1,457.45 | Charles Crews | $1,407.45 |
| Robert E. Crews | 1,407.45 | Everett J. Crews | 1,445.35 |
| Amy Tresner | 1,597.01 | | |
| Mary Willis | 1,597.01 | Total | 8,911.72 |

The parties further stipulated that the items which constituted the sum of $849,544.37 referred to above are as shown in the following tabulation:

OPERATING EXPENSE:

| | | |
|---|---|---|
| Production Expense | | $272,042.56— |
| General Overhead Expense | | 31,107.34— |
| Depletion on Equipment | | 110,888.17— |
| Total Operating Expense | | $414,038.07— |
| Development Expense (drilling costs) | | 387,982.80 |
| Equipment | $158,411.67 | |
| Less: Depletion sustained | 110,888.17 | |
| | | 47,523.50 |
| Total | | $849,544.37 |

Clearly our decisions in these proceedings were reversed by the Circuit Court of Appeals and the cases remanded with a *procedendo*. The court's opinion concluded with the words, "Reversed and remanded to the Board for further proceeding in accordance with this

opinion." Respondent concedes that under the court's mandate a further proceeding was proper to determine the amount of the one-eighth royalty received by petitioners on production during 1930, but objects to the receipt of additional evidence as to what items constituted the sum of $849,544.37, which, under the Board's opinion (33 B. T. A. 36, 50), was deducted as production expense in computing the net income from the property for the purpose of determining the limitation on the allowance for depletion.

Respondent's objections are predicated upon the following grounds: (a) That the petitioners seek to raise an issue which is inseparably a part of and an essential factor of one of the issues heretofore presented to and decided by the Board and the Circuit Court of Appeals; (b) in the alternative, that petitioners are seeking to inject into these proceedings a new issue not heretofore presented to or decided by the Board or the Circuit Court of Appeals; (c) that petitioners are seeking for the first time other and further relief not accorded by the decision of the Circuit Court of Appeals; and (d) that the Board has no power in the present circumstances to receive evidence as to what items constituted the aforesaid sum of $849,544.37, for the reason that the setting of these proceedings for that purpose is not clearly within the purview of the mandate of the Circuit Court of Appeals.

Respondent's objections, we think, are not well founded. He cites and relies on *Peavy-Byrnes Lumber Co.*, 31 B. T. A. 985; affd., 86 Fed. (2d) 234; certiorari denied, 300 U. S. 674. There we held that, where a proceeding is reviewed by the Circuit Court of Appeals on the merits, the Board's decision reversed, and the case remanded with directions to redetermine the tax liability upon a specific basis, the Board is without authority thereafter to permit the pleadings to be amended to raise new issues, or to give any other or further relief. In our opinion we said:

The rule seems to be well settled by the weight of authority that an inferior tribunal, upon remand of a cause by an appellate court, can not take any action not reasonably within the express or implied directions of the reviewing court. * * * The mandate must be interpreted according to its subject matter; and the decree of the appellate court, as well as that of the court below, may be taken into consideration in the interpretation thereof.

The proceedings at bar are clearly distinguishable on the facts. Here there is a remand with a *procedendo*. What further proceedings, then, are "within the express and implied directions of the reviewing court"? Certainly we are not here directed, as in the cited case, to make merely a mathematical calculation according to a formula stated in the mandate.

The sole issue involved is the amount of the depletion allowance, which, under the statute, is 27½ percent of the gross income from

the property, limited by 50 percent of the net income from the property. The Circuit Court of Appeals in its opinion found that the gross income from the property was $1,204,544.37, plus the amount of the one-eighth royalty received by petitioners in 1930. We are plainly directed to ascertain such additional amount in a further proceeding, which we have done. The parties stipulated, and we so find, that the total amount of the one-eighth royalty is $8,911.72. Thus, gross income from the property under the court's opinion is $1,213,456.09. We are without power to add to or take away from this amount. It is the settled law of the case.

However, the other factor which enters into the computation of the depletion allowance, namely, the amount of net income from the property, the court did not determine. It did not by inference or otherwise approve, but on the other hand specifically disapproved, our determination on this point. In its opinion the court declared that the depletion allowance should be 27½ percent of the gross income as therein determined, "or 50 percent of the net income of the petitioners from the property, whichever amount is the lesser." The language used, in our opinion, requires us to compare 27½ percent of the gross income, as determined by the court, with "50 per cent of the net income of the petitioners from the property" and allow the lesser amount as the depletion deduction. The phrase "net income of the petitioners from the property" means the true net income and not the amount heretofore determined by us, which the court held to be in error.

The record before us discloses that in our former decision, which has been reversed on review, we determined the net income from the property by deducting from the gross income the sum of $849,544.37, which sum included drilling and equipment costs. Under subsequent decisions, which will be referred to hereinbelow, it has been held that drilling and equipment costs may not be deducted for such purpose under the statute. It follows, therefore, that in order to comply with the mandate of the court we must compare 27½ percent of the gross income from the property, as determined by the court, with 50 percent of the true net income from the property, computed by eliminating from the deductions from such gross income the drilling and equipment costs before erroneously included, and allow the lesser amount.

Respondent further argues at length that, even if we have implied authority under the court's mandate to redetermine the net income from the property, we should not exclude from the deductions from gross income the amount of drilling and equipment costs, where such items were deducted in computing the *taxable net income*.

In *Ambassador Petroleum Co.* v. *Commissioner, supra*, it was held that development expenses are not deductible in computing the net income from the property. The reasons which led to that conclusion

need not be repeated here. But respondent contends that the present proceedings are distinguishable from the *Ambassador* decision because that case arose under the 1926 Act, and his regulations under that act were silent in respect of the controverted point, while the present cases arose under the 1928 Act and are therefore controlled by article 221 (*i*) of Regulations 74, which provides that "net income of the taxpayer (computed without allowance for depletion)" means the gross income less the deductions in respect to the property upon which depletion is claimed, including overhead and operating expenses, *development expenses (if the taxpayer has elected to deduct development expenses)*, etc.

In *Wilshire Oil Co.*, *supra*, following the *Ambassador* decision, we rejected a similar contention of the respondent, saying:

> Thus the Commissioner, by virtue alone of his regulation, seeks an interpretation of the identical terms of the 1928 Act different from the authoritative judicial interpretation of such terms in the 1926 Act. This would give to his regulation a sanction greater than that of the adjudicated meaning of the same term. This is without support. * * * The Commissioner is without power to change this meaning by a regulation.

We further pointed out that the House and Senate reports on the 1928 Bill treated the term "net income from the property" in the depletion section as meaning *operating income*, and that the court held also that reason leads to the same meaning. But respondent here insists that his regulation under the 1928 Act now has received legislative approval by reason of the reenactment of the same provisions in subsequent revenue acts. This argument likewise must fail, for the reason that an administrative regulation which misinterprets an unambiguous provision of a statute is not given the force and effect of law by subsequent reenactments of the same statutory provision. "Where the law is plain the subsequent reenactment of a statute does not constitute adoption of its administrative construction." *Biddle* v. *Commissioner*, 302 U. S. 573; *Helvering* v. *New York Trust Co.*, 292 U. S. 455; *Louisville & Nashville Railroad Co.* v. *United States*, 282 U. S. 740; *Iselin* v. *United States*, 270 U. S. 245.

In addition to *Wilshire Oil Co.*, *supra*, we have followed the principles declared in *Ambassador Petroleum Co.* v. *Commissioner*, in *Mountain Producers Corporation*, 34 B. T. A. 409; reversed on other grounds, 92 Fed. (2d) 78; *Rocky Mountain Oil Co.*, 36 B. T. A. 365; *I. Rudman*, 36 B. T. A. 803, 807.

In the present case, the total gross income from the property, determined in accordance with the mandate and opinion of the court, was $1,213,456.09. The parties have stipulated that the total *operating expense* was $414,038.07. It follows that the true net income from the property was $799,418.02, and since 50 percent of such net income

is greater than 27½ percent of the gross income from the property, the latter amount represents the depletion allowance. The deficiencies will be recomputed accordingly.

One further point is raised by petitioners. In their motion mentioned above it is stated that the sum of $849,544.37, originally stipulated by the parties as "production expense" and treated wholly as "operating expense", has been, "together with the sum of $173,000.00 expended for attorneys' fees, taken from the gross income from the property to determine the net income from the property for the purpose of applying the 50% limitation on depletion." In their briefs petitioners assert that "these attorneys' fees have been set up as an operating cost", and argue that they should be treated in the same manner as development expenses and equipment costs.

In the situation presented here, we need not decide this point. However the item of attorneys' fees may have been formerly treated, it will not under this opinion be reflected in the recomputation of the net income from the property for the purpose of applying the 50 percent limitation on the depletion allowance. Since the net income from the property, as determined on the basis of the facts stipulated by the parties, does not limit the amount of the allowance for depletion, such allowance will be 27½ percent of the gross income from the property, as determined under the court's opinion and mandate.

*Judgment will be entered under Rule 50.*