*364 OPINION.
Black:
The principal question in this proceeding is whether the income earned by way of leases and royalties from the mineral rights in and under the lands conveyed to petitioner by the Lumber Co. and the Planting Co., respectively, is taxable to petitioner, as the respondent contends, or to the Lumber Co., as petitioner contends. There is no issue as to the correctness of respondent’s determination of the amount of income. It is fundamental that the owner of the income is the proper party to tax. Poe v. Seaborn, 282 U. S. 101. The determination of the ownership of the income here involved turns on whether, under the agreements, resolutions, and acts of transfer referred to in our findings, the Lumber Co. and the Planting Co. in their acts of transfer of the mineral lands in question on February *365 26,1929, reserved an “economic interest” in the lands to the extent of the first $400,000 to be “earned or received, either by way of lease, royalties or otherwise from the oil, gas and other mineral rights in and under the said lands conveyed”, or whether, under such agreements, resolutions, and acts of transfer, no such economic interest was reserved. If, under the agreements, resolutions, and acts of transfer, such an economic interest in the lands was reserved, the proceeding would be controlled by Thomas v. Perkins, 301 U. S. 655, and petitioner would not be taxable on the income in question. If, however, no such economic interest was reserved by the grantors, and the agreements, resolutions, and acts of transfer be construed as having transferred to petitioner, with no reservation of income to the grantors, the entire economic interests in and to the lands conveyed in consideration for petitioner’s capital stock and a purchase money debt and mortgage of $400,000, payable at all events at petitioner’s convenience and from any source that might be available, then it would follow that all of the income earned from the mineral rights in and under the lands would belong to and be owned by and taxed to the petitioner and the payment of such income direct to the Lumber Co., as one of the grantors, and the assignee of the other, would, under those circumstances, be regarded simply as a liquidation fro tanto of the mortgage. Reynolds v. McMurray, 60 Fed. (2d) 843. Cf. Helvering v. Bankline Oil Co., 303 U. S. 362; Helvering v. O'Donnell, 303 U. S. 370; and Helvering v. Elbe Oil Land Development Co., 303 U. S. 372, in which cases an economic interest was distinguished from a mere economic advantage.
The respondent places considerable emphasis upon the giving of the mortgage and the pledging of petitioner’s capital stock. In his brief he says:
The best evidence that ownership of lands had passed to petitioner and that the Lumber Company did not consider seriously that any reservations in said transfer had been made with respect to the $400,000, is shown by the fact that petitioner was required to give the Lumber Company a mortgage, of the lands, and to turn over all its capital stock as security for the payment of the $400,000.
We do not regard the giving of the mortgage and the pledging of petitioner’s capital stock as controlling. We think effect must be given to all of the agreements, resolutions, and acts of transfer taken as a whole, and when this is done it is our opinion that the agreements, resolutions, and acts of transfer, collectively construed, reserved to the grantors such an economic interest in the lands conveyed to the extent of the first $400,000 to be earned or received, either by way of lease, royalties, or otherwise from the oil, gas, and other mineral rights in and under the lands conveyed, as would en *366 title the Lumber Co. to depletion on the oil and royalty payments received during the taxable years, under Palmer v. Bender, 287 U. S. 551, and, as the Fifth Circuit said in Perkins v. Thomas, 86 Fed. (2d) 954 (affd., Thomas v. Perkins, supra): “The broad and general view of local transactions which has been held proper in determining whose are the depletion deductions under the federal tax statutes must for consistency’s sake be applied to questions of whose is the income.” We do not think that the $400,000 represents in any way a part of the purchase price of the lands. The acts of transfer provide specifically that “The consideration of this transfer is the issuance as fully paid stock of Five thousand forty shares (5040), of no par value of the capital stock of Wilbert Mineral Corporation * * We think that the mortgage and pledge should be regarded merely as precautionary measures to guarantee the carrying out of the intention of all the parties concerned, namely, that petitioner was not to enjoy any of the revenues from the mineral rights until the Lumber Co. had received the first $400,000 from that source. Cf. Ortiz Oil Co., 37 B. T. A. 656. In other words, we think the controlling fact is that every precaution was taken to make sure that the first $400,000 of “revenues earned or received, either by way of lease, royalties or otherwise from the oil, gas and other mineral rights in and under the said lands” would go to the Lumber Co., to be used in paying its debts and the debts of the Planting Co., which it took over in April 1929. It was a reservation of income to the grantors out of the lands conveyed and was not purchase money. PerMns v. Thomas, supra. While we do not have the Lumber Co. before us, there seems to be no doubt but that the amounts received should be included in its return, not as the receipt of a capital item, but as taxable income received.
In a statement attached to the deficiency notice the respondent explained his determination of the deficiencies in part as follows:
Any payments to the lumber company would be a payment on the mortgage and, therefore, a capital transaction to the lumber company. The income from the mineral rights owned by the mineral company is income to the mineral company even though by order of the mineral company, paid directly to the lumber company by the oil companies operating the leases. * * *
The amount is held to be your income in accordance with the decision of the Tenth Circuit Court of Appeals rendered April 17, 1933 in the case of Comar Oil Company v. Burnet (64 F. (2d) 965) and with the decision of the United States Board of Tax Appeals in the case of J. C. Pugh, et al., 17 B. T. A., page 429. This latter decision was affirmed by the Circuit Court 49 Fed. (2d) 76.
In his brief the respondent still relies upon the Comar Oil Co. and the Pugh cases as authority for his determination. These cases no *367 doubt support tlie respondent’s determination but are no longer regarded as valid authority for the question here presented. See Commissioner v. Fleming, 82 Fed. (2d) 324; Perkins v. Thomas, supra; Thomas v. Perkins, supra; Holly Development Co. v. Commissioner, 93 Fed. (2d) 148; Rooky Mountain Oil Co., 36 B. T. A. 365; petition for review dismissed April 22, 1938; I. Rudman (first issue therein), 36 B. T. A. 803, 806; and Ortiz Oil Co., supra.
The respondent in his brief says that “while the Pugh and Comar Oil cases may have been overruled in principle in the Perkins case and by Palmer v. Bender, (1932), 287 U. S. 551, in so far as the question of depletion was involved we submit that it still declares valid law as to the questions of title and the construction of the contracts.” As far as title is concerned, the Supreme Court, in the Perkins case, said: “We need not decide whether technical title to the oil while in the ground was in assignors, or in assignee.” As far as the construction of the contracts here involved are concerned, we hold that there was reserved to the grantors of the land an economic interest as distinguished from an economic advantage in the several transfers to petitioner to the extent of the first $400,000 earned or received either by way of lease, royalties, or otherwise from the oil, gas, and other mineral rights in and under the lands conveyed to petitioner by the Lumber Co. and the Planting Co., and that under Thomas v. Perkins, supra, the ownership of the income involved in this proceeding was in the Lumber Co., and it was not, therefore, taxable to petitioner. The respondent’s determination on this issue is reversed.
The facts, as disclosed in our findings, with reference to filing income tax returns for each of the taxable years before us show that petitioner did not file a return for either of the taxable years. Under the Commissioner’s regulations petitioner was required to file a return, whether it had any income or not. See art. 391, Begulations 74 and Begulations 77. Failure to file a required return subjects a taxpayer to penalties, even though he offers a plausible and reasonable excuse. The penalties are mandatory where no return is filed. Paul L. Case, 37 B. T. A. 365; Scranton, Lackawanna Trust Co., Trustee, 29 B. T. A. 698; affd., 80 Fed. (2d) 519; certiorari denied, 297 U. S. 723. But there are no penalties unless there is a tax. See supplement M, section 291, Bevenue Acts of 1928 and 1932.
Inasmuch as petitioner had no income other than the income which we have held belonged to and was owned by the Lumber Co., it follows that there is no tax liability or deficiency or penalty for any of the taxable years involved.

Decision will be entered for the petitioner.