HUNT PRODUCTION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81341. Promulgated September 2, 1938.

*George H. Abbott, C. P. A.* and *J. B. McEntire, Esq.*, for the petitioner.

*John H. Pigg, Esq.*, for the respondent.

OPINION.

TYSON: This is a proceeding for the redetermination of a deficiency in income tax for the year 1932 in the amount of $22,810.96.

The petitioner alleges that the respondent erred (1) in including in petitioner's gross income the amount of $5,000 as profit derived from the sale of the Joe Lee "D" Lease; (2) in including in that income the amount of $1,317.05 as profit derived from certain contingent interest contracts not completed in the taxable year; (3) in failing to allow $5,781.29 as a deduction from petitioner's gross income for depletion based upon oil bonus received by petitioner; (4) in failing to allow a deduction from petitioner's gross income of $3,462.50 for taxes paid; (5) in including in petitioner's gross income the amount of $118,584.52, received by the transferor of certain oil and gas leases from the production of oil from such leases subsequent to the transfer of the leases to petitioner; and (6) in deducting from the gross income of petitioner's oil and gas producing properties intangible drilling and development costs in the amount of $223,035.11 to ascertain the net income from such properties for the purpose of applying the 50 percent limitation provided by section 114 (b) (3) of the Revenue Act of 1932. By amended answer, filed at the hearing, respondent claims an increased deficiency on the ground that he erroneously allowed $223,035.11 as a deduction from the current gross income of petitioner if that amount may not be included in the deductions from gross income from the oil properties in determining the net income from such properties for the purpose of applying the 50 percent limitation in respect of the allowable deduction for depletion within the meaning of section 114 (b) (3), *supra*.

All the facts have been stipulated and the stipulation and exhibits attached thereto are included herein by reference. Only such of those facts as are deemed necessary to decision will be set out herein.

During the year 1932 the petitioner assigned the Joe Lee "D" Lease, which cost it nothing, for a stated consideration of $10,000 to be paid out of the oil and gas when, as, and if produced from the leased lands. During 1932 petitioner collected nothing from the lease and reported no income therefrom in its income tax return for that year, but respondent valued the oil payment contract at $5,000 and included that amount in the income of petitioner.

Respondent, in his deficiency notice, increased the profit of petitioner from certain contingent interest contracts not completed in the taxable year by the amount of $1,317.05.

During the year 1932 petitioner received $21,022.88 as oil bonuses, or advance royalties, from leases assigned by it to others. Respondent did not allow any depletion in respect of that amount.

Incident to incorporation in 1932, petitioner paid in that year to the State of Texas the amount of $962.50 as a franchise tax, which had accrued in that year, and the amount of $2,500 for its charter. The books and records of petitioner were kept and its income tax returns made on the accrual basis.

The petitioner was organized on May 28, 1932, and began business on June 1, 1932, by the acquisition, in exchange for all its capital stock, of the net assets and business of H. L. Hunt, trustee, a co-partnership. Included in those assets were numerous oil and gas leases on lands situated in Rush and Smith Counties, Texas, which the partnership had previously acquired on November 26, 1930, from the lessees C. M. Joiner, Trustee, and C. M. Joiner, individually, the lessees hereinafter being referred to as Joiner.

Two of the assignments by Joiner in the partnership provided for the payment to Joiner of certain amounts in cash and the other assignment provided also for the payment of an amount in cash and a further amount as evidenced by four promissory notes. All assignments provided for the payment to Joiner of further amounts out of the proceeds of the sales in certain specified percentages of oil if and when produced, saved, and marketed from the lands embraced in the leases. The assignments further provided that the assignee should "deliver to the credit" of Joiner "in the pipe line to which" the lease would be connected "the undivided portion of said oil produced and saved belonging to the party of the first part under the terms hereof and the party of the first part shall apply the proceeds of the sales thereof as a credit on the deferred payments as herein set out". Joiner was the party of the first part. There was no assumption by the assignee of personal liability for the amount, or any portion thereof, which was to be paid out of the proceeds of the oil produced, saved, and marketed. Under these assignments the purchasers of the oil produced, saved, and marketed from the properties covered by the leases paid, in 1932, to the parties

from whom the petitioner had acquired the leases, Joiner, or their predecessors in title, the sum of $118,584.52, which was the share of those parties in the proceeds from the sale of oil produced, saved and marketed from the lands embraced in the leases. In its income tax return for 1932 the petitioner did not include the $118,584.52 in its income, but respondent included it therein in his determination of the deficiency herein and allowed a deduction for depletion thereon.

The petitioner expended $223,035.11 on its oil-producing properties during 1932 in intangible drilling and development costs. Pursuant to the policy adopted by it in the taxable year these costs were charged off petitioner's books and deducted as expenses from its gross income in its return for 1932. In determining petitioner's income for 1932 respondent allowed such deduction. Nothing embraced in such costs had any salvage value.

In determining the net income of petitioner from its oil properties for the purpose of applying 50 percent thereof as a limitation upon allowable depletion, under section 114 (b) (3), *supra*, respondent deducted the $223,035.11 intangible drilling and development costs from the gross income from such properties.

The decision as to whether or not respondent erred in including in petitioner's income the amount of $5,000 as profit derived from the sale of the Joe Lee "D" Lease is controlled by the cases of *Edwards Drilling Co.*, 35 B. T. A. 341; affd., 95 Fed. (2d) 719; *Willis R. Dearing*, 36 B. T. A. 843; *Cook Drilling Co.*, 38 B. T. A. 291, and authorities cited therein. Following these authorities, we hold that the respondent erred in including in petitioner's gross income the $5,000 as profit from the sale of the Joe Lee "D" Lease.

As to its second assignment of error it is conceded by stipulation and on brief by petitioner that its gross income should include the amount of $1,317.05 as profit derived from certain contingent interest contracts not completed in the taxable year, as determined by respondent, and in addition the further amount of $668.07. Consequently, we so hold.

The failure of respondent to allow any deduction for depletion based upon oil bonuses, or additional royalties, received by petitioner in the amount of $21,022.88 from leases assigned by it to others was in error. We so hold, under authority of *Palmer* v. *Bender*, 287 U. S. 551, and cases therein cited. Respondent, on brief, apparently abandons contest on this issue, since he states therein that "In view of the decision * * * in the case of *Commissioner* v. *Fleming*, 82 Fed. (2d) 324, the respondent sees no useful purpose will be served by briefing this issue."

Included in the deduction from petitioner's gross income of $3,462.50 for taxes paid, which was disallowed by respondent, was the item of $2,500 paid the State of Texas for its charter and the item

of $962.50 paid that state as franchise tax. Petitioner, on brief, waived its claim for the deduction of the $2,500 charter cost, but adhered to its claim for deduction of the $962.50 franchise tax. The statute laws of Texas impose on every corporation authorized to do business in that state, with certain exceptions immaterial here, an annual franchise tax payable in advance on or before May 1 of each year, or if the corporation is organized after May 1 of any year a certain proportion of the amount of the annual tax to cover the period intervening between the time of its organization and the following May 1; the amount of the annual tax being based upon a certain proportion of the corporation's outstanding capital stock, surplus, and undivided profits, plus the amount of its outstanding bonds, notes and debentures, etc. We are of the opinion, and so hold, that the $962.50 paid as a franchise tax by petitioner was allowable as a deduction from its gross income. This amount accrued and was paid during the taxable year to the State of Texas as a tax and comes within the general provision of section 23 (c) of the Revenue Act of 1932 and is not embraced in any of the exceptions to that general provision.[1] *Kossar & Co.*, 16 B. T. A. 952. Cf. *Jamestown Worsted Mills*, 1 B. T. A. 659; *Petaluma & Santa Rosa Railroad Co.*, 11 B. T. A. 541; *Holeproof Hosiery Co.*, 11 B. T. A. 547; *United States Trust Co. of New York*, 13 B. T. A. 1074; and *United Carbon Co.*, 32 B. T. A. 1000, reversed on another point.

The inclusion by respondent in petitioner's income of the amount of $118,584.52 received by petitioner's transferors from the production and sale of oil from the leased premises was in error and is disapproved. The question is clearly controlled by the case of *Thomas v. Perkins*, 301 U. S. 655, and is so conceded to be by respondent on brief. See also *Rocky Mountain Oil Co.*, 36 B. T. A. 365; *I. Rudman*, 36 B. T. A. 803.

As shown above, the respondent, in his determination of the net income from the oil properties, for the purpose of applying a 50 percent limitation thereon as the allowable depletion, deducted from the gross income from those properties the amount of $223,035.11 expended on them by petitioner as intangible drilling and development costs. The point presented by these facts needs no extended discussion since decision thereon is clearly controlled by the holdings in the following cases: *Ambassador Petroleum Co. v. Commissioner*, 81 Fed. (2d) 474, reversing on this point *Ambassador Petroleum Co.*, 28 B. T. A. 868; *Commissioner v. Wilshire Oil Co.*, 95 Fed. (2d) 971, affirming *Wilshire Oil Co.*, 35 B. T. A. 450; *Rocky Mountain Oil Co.*,

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(c) TAXES GENERALLY.—Taxes paid or accrued within the taxable year, except—

* * * * * * *

*supra; I. Rudman, supra;* and *Ralph W. Crews,* 37 B. T. A. 387. Upon the authority of these cases we hold that the respondent erred in deducting from the gross income of the oil properties the intangible drilling and development costs of $223,035.11 for the purpose of applying the limitation of 50 percent of the net income from such properties to allowable depletion.

In support of the affirmative allegations of his amended answer, respondent contends that if the Board, as it has, should hold herein that the intangible drilling and development costs of $223,035.11 are not deductible from the gross income from the oil properties in determining the net income from those properties for the purpose of applying the 50 percent of such income as a limitation on allowable depletion as provided in section 114 (b) (3), *supra,* that then such amount should not be allowed as a deduction from the gross income of petitioner in determining its taxable net income. This contention invokes violation of respondent's own regulation, article 236, Regulations 77,[2] in force during the taxable year. Regulations on the same subject, substantially the same in substance so far as the question here involved is concerned, have been in effect under the Revenue Acts of 1926 and 1928 and have received legislative sanction by repeated reenactments of substantially the same provisions in the various acts to which the regulations apply. These regulations expressly give the taxpayer the option to deduct such intangible drilling and development costs from his gross income as an expense or to charge same to capital account. The petitioner exercised this option in the taxable year in which it began business by electing to deduct such costs from its gross income rather than to charge same to its capital account. Such election remained binding on petitioner for all subsequent years. That the amount of $223,035.11 expended for intangible drilling and development costs on its oil properties is an allowable deduction from the gross income of petitioner under respondent's current regulation is clear; and this is true notwithstanding that the amount of such expenditure is not to be deducted from the gross income from these properties in determining the net income therefrom for the purpose of applying the 50 percent limitation on allowable depletion. Cf. *I. Rudman, supra.*

This would not be improper as resulting in a double deduction, since the matter of depletion allowance under section 114 (b) (3),

---

[2] ART. 236. *Charges to capital and to expense in the case of oil and gas wells.*—(a) Items chargeable to capital or to expense at taxpayer's option.

(1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * *

* * * * * * *

(d) * * * Any election so made is binding for all subsequent years. * * *

*supra*, is separate and distinct from the matter of deduction from the gross income to determine taxable net income under section 23 (1), Revenue Act of 1932 [3]; one being the determination of the allowance for depletion and the other being the determination of taxable net income, which "are approached by the taxing statutes from entirely different angles". Cf. *Ambassador Petroleum Co.* v. *Commissioner, supra,* concurring opinion; *Mountain Producers Corporation* v. *Commissioner,* 92 Fed. (2d) 78–80; *Commissioner* v. *Wilshire, supra.*

When Congress enacted section 23 (1), *supra,* under which, in accordance with the respondent's regulations of long standing, the taxpayer had the right to, by election, deduct intangible drilling and development costs from gross income in determining taxable net income, it knew the taxpayer also had the right, under section 114 (b) (3), *supra,* simultaneously enacted, to have such costs included in the net income from the oil properties for depletion purposes, and it is clear that in enacting the two sections Congress intended to and did confer both rights upon the taxpayer. Cf. *Commissioner* v. *Wilshire, supra.*

We hold that the Commissioner did not err, as claimed by his amended answer, in his allowance of the deduction of $223,035.11 from the current gross income of petitioner.

*Decision will be entered under Rule 50.*

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(1) DEPLETION.—In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. \* \* \*