THOMAS, COLLECTOR, *v.* PERKINS ET AL.

No. 824. Argued May 4, 5, 1937.—Decided June 1, 1937.

*Mr. J. Louis Monarch,* with whom *Solicitor General Reed, Assistant Attorney General Morris,* and *Mr. Sewall Key* were on the brief, for petitioner.

*Mr. Harry C. Weeks* for the respondents.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Respondents, husband and wife, sued in the district court for northern Texas to recover a portion of the tax they paid for 1933 on their community income. In respect of the amount now in controversy, that court gave judgment for defendant (15 F. Supp. 356); the Circuit Court of Appeals reversed (86 F. (2d) 954) and, its decision being in apparent conflict with that of the Circuit Court of Appeals for the Eighth Circuit in *Comar Oil Co.* v. *Burnet,* 64 F. (2d) 965, this court granted the collector's petition for a writ of certiorari.

Hammonds and Branson owned oil and gas leases on undeveloped lands in Texas which provided for a royalty of one-eighth. They assigned to the Faith Oil Company which was principally owned by Green and Perkins. In taking the assignment the company acted for itself to the extent of one-fourth and for Green and Perkins to the extent of three-eighths each. Later it transferred its interest to Perkins. So far as concerns the question here presented, Perkins may be treated as sole assignee of Hammonds and Branson. The assignment recites that they are owners of all rights under or incident to the leases and declares that "in consideration of the sum of Ten Dollars ($10.00) cash [1] . . . and of the further sum of Three Hundred Ninety-Five Thousand Dollars ($395,000.00) to be paid out of the oil produced and saved from the . . . lands, and to be one-fourth of all the oil produced and saved . . . until the full sum . . . is paid, we . . . do hereby bargain, sell, transfer, assign, and convey all our rights, title, and interest in and to said leases and rights thereunder."

After description of the lands and leaseholds, the assignment provides that the oil payment shall be made to the assignors, Hammonds and Branson, each to receive one-half thereof, "out of the oil produced and saved from" the leased premises, "which payments shall be made by the pipe line company or other purchaser of said oil, and shall be one-fourth ($\frac{1}{4}$) of all the oil produced and saved from the above described land, until the full sum . . . is fully paid." It is understood and agreed that the $395,000 "is payable out of oil only, if, as and when produced from said lands above described, and said oil payment does not constitute and shall not be a personal obligation of the assignee, its successors or assigns. . . . The oil payment

---

[1] Contemporaneously with the assignment there was paid $105,000 in cash and $50,000 in notes.

. . . shall bear none of the expenses of the development of said leases or any other burden." The instrument does not purport to reserve a lien.

Perkins drilled wells on the leased lands and in 1933 produced oil; the assignors received substantial amounts to apply on the payment to be made them; the oil was run from the wells into tanks on the leased premises from which it was taken by pipeline companies purchasing the oil. Each purchaser required and was furnished a division order executed by all the interested parties. By such orders assignors authorized purchasers to receive from the wells one-fourth of the oil and declared that the oil run should become the property of the purchasers as soon as received by them. In accordance with the orders, purchasers made payments directly and proportionately to the owner of the royalty reserved in the lease, to assignors, and to assignee. The last could not collect for any portion of the oil applicable to the oil payment to be made assignors.

In their tax return for 1933 respondents, Perkins and wife, did not include in income any part of the proceeds that went to assignors. But the commissioner charged the amounts received by the assignors to the respondents and allowed the latter depletion in respect of the same. At the trial it was proved that the long-established practice of the bureau was not to require the operator of an oil and gas lease to include as a part of his income the royalties payable in kind to the lessors. But where they were payable in cash the operator included the proceeds of all the oil and took as an offsetting deduction the amount of royalties paid. It was admitted that, if the assignors' payments are excluded, the depletion allowed respondents should be correspondingly reduced.

The question is whether respondents' gross income should include moneys paid to assignors by purchasers of the oil.

We need not decide whether technical title to the oil while in the ground was in assignors, or in assignee. The federal income tax Act is to be given a uniform construction of nation-wide application except insofar as Congress has made it dependent on state law.[2] The granting clause in the assignment would be sufficient, if standing alone, to transfer all the oil to the assignee. It does not specifically except or exclude any part of the oil. But it is qualified by other parts of the instrument. The provisions for payment to assignors in oil only, the absence of any obligation of the assignee to pay in oil or in money, and the failure of assignors to take any security by way of lien or otherwise unmistakably show that they intended to withhold from the operation of the grant one-fourth of the oil to be produced and saved up to an amount sufficient when sold to yield $395,000.[3]

The construction that the parties put upon the assignment makes for the same conclusion. There is no suggestion that, having taken title, the assignee transferred any of the oil back to assignors. The division orders designated, and so served to indicate ownership of, the quantities belonging to each of the interested parties. And, in the circumstances, the orders given and proceeds received by assignors necessarily covered and were derived from oil not transferred by the assignment.

Our decision in *Palmer* v. *Bender*, 287 U. S. 551, supports the view that the assignment did not transfer the

---

[2] *Lynch* v. *Alworth-Stephens Co.*, 267 U. S. 364, 370. *Corliss* v. *Bowers*, 281 U. S. 376, 378. *Tyler* v. *United States*, 281 U. S. 497, 503. *Burnet* v. *Harmel*, 287 U. S. 103, 110. *Palmer* v. *Bender*, 287 U. S. 551, 556. *Burnet* v. *Guggenheim*, 288 U. S. 280, 284. *Helvering* v. *Falk*, 291 U. S. 183, 188.

[3] *Sheffield* v. *Hogg*, 124 Tex. 290; 77 S. W. (2d) 1021. See *Waggoner Estate* v. *Sigler Oil Co.*, 118 Tex. 509; 19 S. W. (2d) 27. *Hager* v. *Stakes*, 116 Tex. 453; 294 S. W. 835. *Stephens County* v. *Mid-Kansas Oil & Gas Co.*, 113 Tex. 160; 254 S. W. 290. *Texas Co.* v. *Daugherty*, 107 Tex. 226; 176 S. W. 717.

oil in question. We there construed § 214 (a) (10), Revenue Act of 1921, 42 Stat. 241, which directed a reasonable allowance for depletion in the case of oil and gas wells "according to the peculiar conditions in each case" and "that such depletion allowance based on discovery value shall not exceed the net income, computed without allowance for depletion, from the property upon which the discovery is made . . . In the case of leases the deductions allowed . . . shall be equitably apportioned between the lessor and the lessee."

The taxpayer, Palmer, was a member of a partnership that acquired oil and gas leases, discovered oil, executed a writing conferring on a company the right to take over a part of the leased property in consideration of a present payment of a cash bonus, and future payments to be made "out of one-half of the first oil produced and saved" to the extent of $1,000,000, and an additional "excess royalty" of one-eighth of all the oil produced and saved. The writing declared that the partnership "does sell, assign, set over, transfer and deliver . . . unto the" oil company the described leased premises.

In his tax return, Palmer reported his share of the income derived by the partnership from the bonus payment and oil received under its contract with the oil company and, relying on § 214 (a) (10), made a deduction for depletion based on value of oil in place on the date of discovery. The commissioner refused to allow the deduction on the theory that the transaction was a sale of the leases by the partnership, and that the only allowable deduction was one based upon the cost of the property. As cost was less than the discovery value, the commissioner's allowance of depletion was less than that claimed by Palmer and the tax was correspondingly greater. He paid it, and sued the collector to recover the amount by which the commissioner's ruling operated to increase his burden.

The district court upheld the commissioner's ruling, the Circuit Court of Appeals affirmed, this Court reversed.

We said (pp. 557–558): "The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital. . . . Similarly, the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if, by virtue of the leasing transaction, he has retained a right to share in the oil produced. If so he has an economic interest in the oil, in place, which is depleted by production. Thus, we have recently held that the lessor is entitled to a depletion allowance on bonus and royalties, although by the local law ownership of the minerals, in place, passed from the lessor upon the execution of the lease. . . . Thus, throughout their changing relationships with respect to the properties, the oil in the ground was a reservoir of capital investment of the several parties, all of whom . . . were entitled to share in the oil produced."

Thus in that case we held assignors' mere stipulation for royalty out of oil operated to save to them an economic interest in the oil sufficient to entitle them to deduct from their income derived from the oil an allowance for depletion. If Palmer had retained no interest in the oil he would have been entitled to no deduction on account of depletion. Ownership was essential. The assignee was not entitled to income from Palmer's share of the oil nor to deduct from the income it received from its own interest any part of the depletion allowance that was attributable to Palmer's interest.

*Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312, construed depletion provisions in the Revenue Act of 1926 which so far as concerns ownership are not to be distinguished from corresponding provisions considered in

*Palmer* v. *Bender, supra.* Section 204 (c) (2) declared that in the case of oil and gas wells "the allowance for depletion shall be 27½ per cent. of the gross income from the property during the taxable year." Section 234 (a) (8) required the deductions allowed to be equitably apportioned between the lessor and lessee. The taxpayer, assignee of the lease, extracted substantial quantities of oil. By the terms of the lease and assignment he was obligated to pay royalties in cash or kind totalling one-fourth of the oil. He claimed that gross proceeds of all the oil should form the basis for computation of the allowance for depletion. The commissioner ruled that the deduction should be limited to 27½ per cent. of the gross production less royalties. The Board of Tax Appeals upheld that ruling; the Circuit Court of Appeals reversed the Board; we sustained the Commissioner. Our opinion shows that the phrase, "income from the property," means income from oil and gas only; that, where the lessee turns over royalty oil in kind to the lessor, the amount retained by lessee is the basis for his computation of depletion and the royalty oil is the basis for that allowable to lessor. In that connection we suggested that Congress did not intend a different result where the lessee sells all the oil and pays over the royalty in the form of cash. And in approval of the Commissioner's ruling we said (p. 321): "The apportionment gives respondent 27½ per cent. of the gross income from production which it had the right to retain and the assignor and lessor respectively 27½ per cent. of the royalties they receive. Such an apportionment has regard to the economic interest of each of the parties entitled to participate in the depletion allowance. Compare *Palmer* v. *Bender,* 287 U. S. 551. 558."

As in the earlier of these cases the assignor was entitled to deduct depletion from income he received from his interest in the oil, so in the later one the assignee was not entitled to deduct from income received from its share an

allowance for depletion attributable to the assignor's interest. The owner of an interest in the deposit is entitled to deduct for depletion of the part producing his income but may not deduct for depletion of a share belonging to another.

As Hammonds and Branson, the assignors in this case, would be entitled to an allowance for depletion in respect of the oil sold out of their share,[4] the income from that interest is not chargeable to respondents, Perkins and wife. It follows that the Commissioner erred in including in their income the payments made by purchasers to assignors for their share of the oil.

*Affirmed.*

MR. JUSTICE STONE and MR. JUSTICE CARDOZO think the oil and gas produced by the assignee of the lease, and their proceeds, were his income and not any the less so because he agreed to apply a part to payment of the purchase price of the lease, and gave an equitable lien to secure the payment. Whether the purchase price, when paid, represented a capital gain taxable to the assignors, and whether in that case their interest would be subject to a depletion allowance under our decision in *Palmer* v. *Bender*, 287 U. S. 551, are questions irrelevant to the present issue. The judgment should be reversed.

[4] Revenue Act of 1932, §§ 23 (1), 114 (b) (3), 47 Stat. 181, 202. *Palmer* v. *Bender*, 287 U. S. 551. *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312.