### HOLLY DEVELOPMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8456.

Circuit Court of Appeals, Ninth Circuit.

Dec. 6, 1937.

Claude I. Parker, John B. Milliken, and Bayley Kohlmeier, all of Los Angeles, Cal. (L. A. Luce, of Washington, D. C., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, Ellis N. Slack, and Fred E. Youngman, Sp. Assts. to Atty. Gen., for respondent. .

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

### GARRECHT, Circuit Judge.

Involved herein are deficiencies in income taxes for the years 1923, 1924 and 1925, determined by the Board of Tax Appeals to be in the amounts of $23,515.40 $216.10 and $76,235.45, respectively, and the case is brought before us by petitions to review the decision of the Board.

The facts were found to be as follows:

About November 1, 1922, S. W. Sinsheimer, having been informed by a representative that the Argonaut Oil Company of San Francisco, the owner of valuable oil leases, was in financial difficulties and that it was possible that its properties might be acquired under advantageous terms, contacted the officers of Argonaut, and found that it was deeply in debt with the possibility of forfeiting some of its leases.

On November 24, 1922, an agreement was entered into between Argonaut and Sinsheimer, which was supplemented by an explanatory agreement on December 29, 1922. The agreements provided that Argonaut, in consideration of $10 and the covenants, granted, sold, assigned and transferred to Sinsheimer certain oil leases subject to the terms contained therein, together with all buildings, improvements, machinery and equipment and other personal property of Argonaut, for and during the remainder of the terms of the leases. Argonaut agreed to immediately put Sinsheimer in possession of the premises, whereupon he was to take charge of operations, and it also agreed to execute and deliver the necessary instruments to convey title to the leases. Sinsheimer agreed to lend Argonaut $130,000 at 6 per cent. interest, repayment to be made out of oil production, and if not paid by January 1, 1927, the amount due to become payable in cash. All of the proceeds from the production of the wells was to be received by Sinsheimer who agreed to make payment therefrom in the following order: (1) Rentals and royalties; (2) payment of operating, overhead and maintenance charges; (3) payments to Argonaut of $6,000 per month until it should have received $120,000; (4) payments to Sinsheimer until he should have been repaid $130,000 with interest thereon and all actual expenditures charged or incurred by him in the drilling of new wells and redrilling of old; (5) all the remainder of the proceeds, less the cost of additional development, to be distributed 60 per cent. to Sinsheimer and 40 per cent. to Argonaut, inclusive of the monthly payment of $6,000 unless the drilling expenses exceeded the amount of $120,000, in which event the remainder was to be distributed 65 per cent. to Sinsheimer and 35 per cent. to Argonaut.

It was further provided that in the event Sinsheimer failed to perform his covenants Argonaut might, upon 30 days notice, terminate the agreement, in which case the moneys paid by Sinsheimer should inure to the benefit of Argonaut, and, also, that in the event of default by Argonaut, it should pay Sinsheimer the amount of advances with interest thereon at 6 per cent., and the agreement should be terminated.

Prior to making the agreement Argonaut had been indebted in large sums; creditors representing $130,000 indebtedness refused to be postponed and the $130,000 was advanced by Sinsheimer to pay them. The $6,000 per month was to pay creditors totaling $120,000 who had agreed to installment payments.

The petitioner is a corporation, formed December 13, 1922, with an authorized capital stock of 1,000,000 shares at a par value of $1 per share. December 28, 1922, it issued 500 shares of stock to its incorporators for cash at par. January 4, 1923, Sinsheimer, who had been operating as representative of his syndicate, offered to purchase 900,000 shares of stock of petitioner at par and to make payment as follows: $170,000 cash; and assignment of rights and interest conveyed to him by Argonaut, valued at over $730,000. The offer further provided that the petitioner was to be subrogated to all rights in the loan of $130,000 made to Argonaut and to the repayment thereof with interest, provided petitioner would give its note for $150,000 to Sinsheimer. Petitioner's board of directors accepted Sinsheimer's offer

January 24, 1923, authorized the issuance of its note to him for $150,000 and the issuance of 899,500 shares of stock. The reduction in shares of stock issued was occasioned by the reduction of the cash payment from $170,000 to $169,500.

A misunderstanding arose in July, 1924, between_ Argonaut and petitioner, which was settled in August, 1924, by a compromise agreement which provided that petitioner should immediately pay $26,413.44, being the agreed balance of the $120,000, referred to in the contract of November 24, 1922, and that petitioner should lend Argonaut an additional $10,000. This compromise agreement also provided for a further division of the proceeds from the wells, so that petitioner would be secured in its loan.

During 1923 Argonaut received nine monthly payments of $6,000 each and $66,000 in 1924, thus completing the $120,000 payable to Argonaut under the contract. The Commissioner included these amounts, $54,000 in 1923 and $66,000 in 1924, as part of petitioner's taxable income for the respective years and computed a tax thereon.

During the year 1923 petitioner received on the loan of $130,000 made by Sinsheimer to Argonaut, the sum of $116,876.50, which the Commissioner included in petitioner's taxable income for 1923 and computed a tax thereon.

Petitioner asserts that, when said sums of $54,000, $66,000 and $116,876.50 are excluded or deducted from its income for the years 1923 and 1924, it then had a net loss which it was entitled to carry forward as a deduction in computing its net income for the year 1925. By reason of his determination that said sums were income to petitioner and could not be deducted as expense, the Commissioner determined that petitioner had no such net loss and refused to allow any deduction therefor for 1925. The deficiency in petitioner's income tax for the year 1925, herein contested, resulted from respondent's determination that petitioner had no net loss which could be carried forward to 1925.

Petitioner contends that said sums of $54,000, $66,000 and $116,876.50 were not income to petitioner and should not have been included in petitioner's income in computing its income tax liability for the years 1923 and 1924. And, further, that if said sums were properly included in petitioner's gross income for the years 1923 and 1924, said sums represented royalties which should have been deducted from petitioner's gross income as rental expense in determining petitioner's net income for federal income tax purposes.

The respondent states the question to be "Whether that part of the proceeds from the sale of oil which was paid to or for the benefit of the assignor of certain oil and gas leases by the assignee should be included in the gross income of the assignee for the years in question?" The respondent urges that by the assignment of November 24, 1922, it was the intention of the parties to divest Argonaut of all right, title and interest in the leases and the personal property connected therewith; that Argonaut retained no interest in the oil in place, in so far as the payments here in question are concerned; and that such payments were capital expenditures made in connection with the acquisition of capital assets and were in reality a part of the purchase price and, therefore, includible in the gross income of petitioner.

We are unable to accept this view of respondent because, by the agreement referred to, Argonaut excepted and reserved to itself an interest in the lease and in the oil. Commissioner v. Elliott Petroleum Corp. (C.C.A.9) 82 F.2d 193; Perkins v. Thomas (C.C.A.5) 86 F.2d 954; Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Alexander v. Continental Petroleum Co. (C.C.A.10) 63 F.2d 927; Commissioner v. Fleming (C.C.A.5) 82 F.2d 324; Commissioner v. Williams (C.C.A.5) 82 F.2d 328; Commissioner v. Jones (C.C.A.5) 82 F.2d 329.

In Commissioner v. Elliott Petroleum Corp., 82 F.2d 193, decided by this court, the company which was the taxpayer in that case had purchased an oil lease in 1922 and sold the lease in 1928 for $275,000, one-half payable in cash and the balance payable out of one-half the net proceeds of all production from the demised premises. The Board of Tax Appeals held that, as the taxpayer was to be paid from the proceeds of oil property and not otherwise, the respondent had an economic interest in the oil in place which entitled it to a share in the depletion allowance to be made the lessee. In sustaining the Board this court said (page 194): "It cannot be doubted that the respondent had an economic interest in the oil in place to the extent of at least one-half the net

oil produced until it had been paid the balance due to it."

Following our decision in the Elliott Case, supra, we must conclude that Argonaut actually had an economic interest in the oil in place. If that is true, the payments made by petitioner were not a part of the purchase price, but really Argonaut's share of the proceeds of the wells, for the reason that Argonaut would, under the contract, continue to share in the proceeds of the wells, even after the payment of the $120,000 and repayment of its loan of $130,000.

Thomas v. Perkins, 301 U.S. 655, 57 S.Ct. 911, 914, 81 L.Ed. 1324, decided June 1, 1937, seems to be on all fours with the instant case, and is relied upon by the petitioner. In that case additional income taxes for the year 1933 were assessed against and paid by Perkins and his wife. Denied refund they sued the collector. The facts were that during 1931 they acquired along with others a transfer of an oil and gas lease on Texas land made in consideration of a small amount of cash and of $395,000 to be paid out of oil produced and saved. During the tax year 1933, oil having been discovered, large sums were paid to the transferors of the lease on account of this "oil payment." The Commissioner considered these sums to be income of the transferees subject to tax, though immediately paid over to the transferors, and assessed additional taxes accordingly. The District Court upheld the Commissioner. The Circuit Court of Appeals reversed the District Court's judgment, and the Supreme Court affirmed that of the Circuit Court of Appeals. After discussing Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489, and Helvering v. Twin Bell Oil Syndicate, 293 U.S. 312, 55 S.Ct. 174, 79 L.Ed. 383, the Supreme Court said:

"As in the earlier of these cases [Palmer v. Bender] the assignor was entitled to deduct depletion from income he received from his interest in the oil, so in the later one [Helvering v. Twin Bell Oil Syndicate] the assignee was not entitled to deduct from income received from its share an allowance for depletion attributable to the assignor's interest. The owner of an interest in the deposit is entitled to deduct for depletion of the part producing his income but may not deduct for depletion of a share belonging to another.

"As Hammonds and Branson, the assignors in this case [Thomas v. Perkins], would be entitled to an allowance for depletion in respect of the oil sold out of their share, the income from that interest is not chargeable to respondents, Perkins and wife. It follows that the Commissioner erred in including in their income the payments made by purchasers to assignors for their share of the oil."

Upon the authority of Thomas v. Perkins, supra, the decision of the Board of Tax Appeals must be reversed, and the cause remanded for further proceedings not inconsistent herewith.