*Decision will be entered under Rule 50.*

ORTIZ OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86112. Promulgated April 13, 1938.

*Harry C. Weeks, Esq.*, for the petitioner.
*Ralph E. Smith, Esq.*, for the respondent.

658

**OPINION.**

HILL: *Issue (1).*—Petitioner complains of the action of respondent in determining that it derived a profit from drilling the Hale No. 3 well. Petitioner owned a one-half interest in the Hale lease, the other half being owned by three individuals. Petitioner drilled a well on the property under an agreement whereby the other joint owners were to pay the sum of $5,750 as their share for drilling and equipping a well. One-half of the actual cost to petitioner was $4,122.23, and the difference between this amount and $5,750 received by petitioner from the other joint owners, or $1,627.77, respondent included in gross income as profit derived from the transaction.

It cost the petitioner $8,244.46 to drill and equip the well and it claims the total amount thereof as its development cost and endeavors

to capitalize it as such. This claim is apparently based on the theory that the well and equipment were the property solely of petitioner until its coowners paid for an interest therein after the well was drilled and equipped. Accordingly, petitioner charged the amount of $8,244.46 to development cost and credited thereon the $5,750 paid by its coowners, thus reducing its claimed development cost to a net of $2,494.46. We can not accept this theory. The development was a joint enterprise of petitioner and its coowners of the lease under the agreement that petitioner would drill and equip the well in consideration of the payment to it by the coowners of the flat sum of $5,750 for their one-half of such development. This was a turnkey agreement as to the interest of the coowners in the development. The well with the equipment was a development of which the petitioner owned an undivided one-half interest and its coowners a like interest from the inception of the development. Notwithstanding that it cost $8,244.46 to drill and equip the well, the burden of only one-half of such cost was upon petitioner. Its development cost in this connection was applicable to only a one-half interest in the equipped well and was $4,122.23 instead of $8,244.46, or instead of the latter amount less the credit of $5,750 as claimed by petitioner. Petitioner at no time owned more than a one-half interest in the well and equipment and acquired no capital investment and incurred no development cost in respect of its coowners' one-half interest therein. The sum of $5,750 paid to petitioner by its coowners was, under the turnkey agreement, development cost of such coowners, applicable to their one-half interest in the equipped well, and no part of that sum should be credited to petitioner's development cost. Under the turnkey agreement with its coowners petitioner realized a profit in the amount of the difference between $5,750 and $4,122.23, or $1,627.77, which should be included in its gross income. Accordingly, upon this issue we sustain the respondent.

*Issues (2) and (3).*—The transactions between petitioner and Westbrook and Thompson and between petitioner and C. H. Staley were substantially similar, differing only as to properties and amounts. Both were treated by the respective parties hereto in the same manner. For convenience our discussion will be limited principally to the transaction with Westbrook and Thompson. However, the conclusions reached will apply equally to the transaction with Staley.

The transaction with Westbrook and Thompson petitioner treated on its books as a loan. In its income tax return, petitioner included in gross income the total proceeds from the sale of oil in the taxable year, and claimed as a deduction for interest approximately four-sevenths of the amount paid in such year to Westbrook and Thomp-

son, approximately three-sevenths of that amount being regarded as repayment of borrowed principal. In computing the deficiency, respondent disallowed the deduction for so-called "interest expense", and treated the total amount received by petitioner from Westbrook and Thompson as proceeds from the sale of "oil payments", but included the amount thereof in petitioner's gross income from the properties, subject to depletion, and without deduction of any cost basis. Neither treatment of the transaction, we think, is correct.

Substantially, the situation involved here may be summarized as follows: During the taxable year petitioner owned certain oil and gas leases and had an opportunity to acquire certain other oil and gas leases, but did not have the required capital to make the purchase and to develop and operate the properties. It obtained options and then entered into negotiations with Westbrook and Thompson to acquire the necessary funds to finance the deal. The latter individuals paid $154,000 to make such purchase by petitioner, to drill two wells on leases already owned by petitioner and to pay some of its outstanding obligations. The money was not furnished as a loan, to be repaid by petitioner at all events, with interest, as it was treated by petitioner, but as a cash consideration for the purchase by Westbrook and Thompson of certain specified proportions of the oil production, to the extent of $359,333.34 in value, if, as, and when same should be produced, saved, and sold from certain lands and leases, including, among others, those so purchased and drilled.

Such portions of the production belonged to and constituted property of Westbrook and Thompson, and petitioner was obligated only to pay over and account to them therefor, when produced. The lien given to Westbrook and Thompson was not intended to secure the repayment of a loan, but to insure that petitioner would adhere to and perform the conditions of the contract and "pay and account" to them for their share of the oil when produced.

Petitioner was to develop and operate the properties, and pay all expenses. Westbrook and Thompson acquired an "overriding interest", their portions of the oil runs being net to them. Westbrook and Thompson paid the money in exchange for an agreed interest in any oil and gas or other minerals that might be "produced, saved and sold" from petitioner's properties. If none were produced, they lost their money, and petitioner was under no obligation to repay it. The transaction constituted a sale by petitioner of oil in place and it realized taxable gain thereon in the amount of $154,000 less the amount of the cost bases allocable to the oils required to discharge the oil payments as set forth in our findings of fact. Westbrook and Thompson were entitled to receive the specified proportions of the proceeds of sales, or to take their share of the oil and gas production

in kind, at their election. The balance of the proceeds or production belonged to petitioner. Therefore, petitioner was not entitled to deduct as interest or otherwise any part of the proceeds of oil paid to Westbrook and Thompson.

The right to share in the oil produced constituted an interest in the oil in place. Hence, the right of Westbrook and Thompson to their proportion of the oil and gas, or proceeds from sales, upon production, constituted an economic interest in the properties, to the extent of the amount agreed upon. Likewise, the right of petitioner to the balance of production constituted an economic interest in the properties. Proceeds from sales of production, therefore, constituted income to Westbrook and Thompson to the extent of the proportion received by them, and the balance only constituted gross income to petitioner. *Thomas* v. *Perkins*, 301 U. S. 655; *Commissioner* v. *Elliott Petroleum Co.*, 82 Fed. (2d) 193; *Commissioner* v. *Fleming*, 82 Fed. (2d) 324; *Commissioner* v. *Williams*, 82 Fed. (2d) 328. Petitioner is entitled to a deduction for depletion computed on the basis only of the income received by it as its portion of the production in the taxable year. *Palmer* v. *Bender*, 287 U. S. 551. It is not entitled to allowance for depletion on the proceeds of the sale to Westbrook and Thompson. Cf. *Commissioner* v. *Fleming*, *supra*, which affirmed 31 B. T. A. 623; *Darby-Lynde Co.* v. *Alexander*, 51 Fed. (2d) 56; and *Lester W. Fritz*, 28 B. T. A. 408.

The facts in the Staley transaction are so nearly like those in the Westbrook and Thompson transaction, except as to names and amounts, that the discussion on the latter is applicable to the former and the same conclusions of law must be reached in both. Accordingly, we hold that the Staley transaction constituted a sale by petitioner of oil in place and that petitioner realized taxable gain in the amount of $12,500, less the amount of the cost basis allocable to the oil required to discharge the oil payments as set forth in our findings of fact; that petitioner is not entitled to deduct as interest or otherwise any part of the proceeds of oil paid to Staley; that it is entitled to a deduction for depletion computed on the basis only of the income from the property received by it as its portion of the production in the taxable year; and that petitioner is not entitled to an allowance for depletion on the proceeds of the sale to Staley of an interest in the oil production.

*Issue* (*4*).—During the taxable year petitioner paid to Farrell and Moncrief the sum of $9,301.82 on account of the interest retained by them in the oil production from the Giles lease, and in the same year paid the trustees of the Kilgore Independent School District the sum of $1,122.05 pursuant to the terms of the lease by which the school

district retained an interest in any oil produced from its land. In computing the deficiency, these amounts were included by respondent as part of petitioner's gross income from the properties. The precise question presented here was decided in *Thomas* v. *Perkins*, *supra*. The amounts in controversy constituted income to the respective parties receiving them, since the payments were made under rights which represented retained economic interests in the properties. It follows that respondent erred in including such amounts in petitioner's gross income. Respondent in his brief concedes error on this point.

*Issue (5).*—In 1932 petitioner drilled a dry hole on the Hale lease at a cost of $9,231.45, which amount it deducted on its return in computing taxable net income. Respondent allowed the deduction claimed by petitioner in determining its taxable income, but deducted the amount from gross income from the property in computing the limitation on the amount of depletion allowable under section 114 (b) (3), of the Revenue Act of 1932.

Development cost is not operating cost, and may not be deducted from gross operating income in determining the net income from the property for the purpose of applying the 50 percent limitation on the allowable deduction for depletion provided by the above cited statute, even though such cost has been deducted by petitioner from gross income in computing its taxable income. Respondent's action on this point is reversed. *Rocky Mountain Oil Co.*, 36 B. T. A. 365. See also *Wilshire Oil Co.*, 35 B. T. A. 450; *Mountain Producers Corporation*, 34 B. T. A. 409; *Ambassador Petroleum Co.* v. *Commissioner*, 81 Fed. (2d) 474.

On brief, petitioner asserts that respondent in determining the net income from the property, before deducting depletion, took into consideration overhead expense and depreciation on physical equipment, in addition to the cost of drilling a dry hole, and contends that "operating profit" does not include such items as overhead expense and depreciation. This question not having been raised in the original pleadings or amendments thereto but raised on brief only, we decline to consider it in this proceeding. *North American Coal Corporation*, 28 B. T. A. 807; *Jean Conrad*, 27 B. T. A. 741, 743; *H. Milgrim & Brothers, Inc.*, 24 B. T. A. 853, 856; *American Industrial Corporation*, 20 B. T. A. 188.

The deduction for depletion to which petitioner is entitled will be recomputed on the basis of the gross income and the net income from the various properties of petitioner, determined in accordance with the foregoing opinion.

*Judgment will be entered under Rule 50.*