H. R. CULLEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LILLIE CRANZ (MRS. H. R.) CULLEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 94021, 94022.   Promulgated May 3, 1940.

*Palmer Hutcheson, Esq.*, for the petitioners.
*R. P. Hertzog, Esq.*, for the respondent.

## OPINION.

ARNOLD: These proceedings, like their companion case, West Production Co., Docket No. 88997, require a determination of the tax liability resulting from the transfer of an undivided interest in the so-called Thompson Oil Field to Humble. The surtax rates applicable to individual incomes work to the disadvantage of these taxpayers, as compared with corporate rates, unless they can bring themselves within the provisions of section 102 (a) of the Revenue Act of 1932, set forth in the margin.[1] Even with the benefit of the limitation provisions of section 102 (a) petitioners' tax rate would be 16 percent, as compared with the corporate rate of 13¾ percent.

Petitioners, therefore, have vigorously contended that the transaction of March 23, 1932, was a bona fide sale of an undivided interest in the leases, wells, and equipment making up the Thompson Oil Field. They point out that the stipulated facts, documentary evidence, testimony, and surrounding circumstances all indicate that West Production Co. and the petitioners sold five-sixths of their undivided interest to Humble. Furthermore, they rely on the language used by the Texas Civil Court of Appeals in *West* v. *Cashin*, 83 S. W. (2d) 1001, which involved a fee due Cashin for assisting "in making a sale" of these very oil properties. The use of the term "sale" as there used by the court is not controlling here. Whether the transaction was a sale or a sublease did not affect Cashin's right to recover and the court was not called on to determine the nature of the transaction. Petitioners here are in a position similar to that occupied by the taxpayer in *Palmer* v. *Bender*, 287 U. S. 551, in which the Supreme Court rejected the Government's argument that the transaction was a sale. See also *Marrs McLean*, 41 B. T. A. 565, and *West Production Co.*, 41 B. T. A. 1043, decided this day.

In the Supreme Court case partnerships in which Palmer was a member conferred upon two separate oil companies the right to take over certain leased property for cash, oil payments, and overriding royalties. The taxpayer claimed depletion based upon discovery value. The Commissioner denied the deduction upon the theory that both transactions were *sales* and that the only allowable deductions

---

[1] SEC. 102. SALE OF MINES AND OIL OR GAS WELLS.

(a) In the case of a bona fide sale of mines, oil or gas wells, or any interest therein, where the principal value of the property has been demonstrated by prospecting or exploration and discovery work done by the taxpayer, the portion of the tax imposed by section 12 of this title attributable to such sale shall not exceed 16 percentum of the selling price of such property or interest.

in calculating the taxable gains were those based upon the cost of the properties, which was materially less than value at the date of discovery of oil. Palmer sued to recover the additional taxes paid as a result of the Commissioner's determination. The lower courts both held the transactions were *assignments or sales*. The Supreme Court held it was immaterial whether the transactions were sales or subleases, and that the formal attributes of the instruments or the descriptive terminology applied to them by local law was irrelevant. The Court said that for depletion purposes "It is enough if, by virtue of the leasing transaction, he has retained a right to share in the oil produced. If so he has an economic interest in the oil, in place, which is depleted by production." See also *Thomas* v. *Perkins*, 301 U. S. 655.

The respondent, relying upon the above decision, determined that the present transfer amounted to a sublease as to those leases in which petitioners retained an overriding royalty, coextensive with the lease, and a sale as to those leases in which petitioners retained only an oil payment, citing *Commissioner* v. *Fleming*, 82 Fed. (2d) 324. Respondent, contending that this transaction contains both the *Palmer* and the *Fleming* situations, breaks down the transfer into two separate types of transactions and applies the cited decisions to the respective situations.

We agree with the respondent that the instant transaction was more in the nature of a sublease than a sale, but we can not agree that the transfer is divisible into a sublease as to all but three of the leases and a sale as to those three. *West Production Co., supra*. The oral testimony and the documentary evidence refute respondent's argument that this transaction was divisible into separate transfers of one or more leases for varying considerations. Wallace E. Pratt, the Humble representative, testified unequivocally that the moving consideration to Humble was the acquisition of an undivided interest in the oil field as a unit, and that no consideration was given to the value of one lease over another, or with relation to other leases. The documentary evidence shows that the property transferred was an undivided interest in a producing field as a whole and, therefore, we see no justification in the *Palmer* or *Fleming* decisions, *supra*, for breaking down the transfer into arbitrary classifications not contemplated or intended by the contracting parties. See discussion of this point in *West Production Co., supra*. The transfer was made for a consideration consisting of a cash payment, or bonus, future payments to be made from oil produced, royalties reserved for the life of the leasehold interest transferred, and certain other reserved rights. Depletion, therefore, should be allowed on the bonus payment, *Marrs McLean, supra*, on the oil payments, *Charles Pettit*, 41 B. T. A. 264, and on the oil royalties, *Palmer* v. *Bender, supra*.

Our determination that the transaction can not be considered a sale for income tax purposes disposes of petitioners' contentions regarding the applicability of section 102 and their contentions against the respondent's allocation of the cash payment. All of the cash payment will be subject to percentage depletion, and, as there is no dispute between the parties relative to depletion of the oil payments and oil royalties, the depletion issue can be settled under Rule 50.

The evidence indicates that percentage depletion deductions will exceed petitioners' costs of leaseholds and equipment. Under the doctrine of *Cook Drilling Co.*, 38 B. T. A. 291, petitioners are not limited to recovery of costs, but may recover through percentage depletion deductions much more than their investment. Under this doctrine it is unnecessary to determine whether there is a merger of equipment costs with investment costs, because, in any event, petitioners will more than recoup their total investment out of the depletion allowances.

In view of the foregoing discussion it is unnecessary to consider the issue raised by respondent's amended answer relative to the allocation urged upon us by the taxpayer in *West Production Co.*, Docket No. 88997.

Petitioners' contention that respondent is estopped to claim an increased deficiency as to 1932 because of the conditions attached to the consents, is not well founded. The conditions relate to the execution of a closing agreement, not to the determination of petitioners' correct tax liability. Furthermore, the correspondence between the parties creates a substantial doubt in our mind that respondent ever accepted the conditions petitioners tried to impose. In any event, whatever binding effect these conditions may have had with respect to the consents executed in 1936 would seem to have expired at the time the deficiency notices were issued, as further consents were executed in 1937.

The disputed expense items in 1935 are not, in our opinion, ordinary and necessary business expenses. *Welch* v. *Helvering*, 290 U. S. 111. The $500 payment to Clayton had no relationship to petitioners' oil business. It was purely a personal expense to protect the right of petitioners to file separate income tax returns of one-half of the community income. The payments to the J. S. Abercrombie Co. and to J. M. West, trustee, were for the purpose of opposing enactment of legislation deemed detrimental to petitioners' business and were voluntary rather than obligatory. These disbursements were too remote in their relationship to petitioners' business to be within the scope of the term "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." *Deputy* v. *du Pont*, 308 U. S. 488; *A. Giurlani & Bro.*, 41 B. T. A. 403. The disbursements were extraordinary in character and

1064

were for the purpose of influencing legislation, which is outside the normal conduct of a business enterprise. *Old Mission Portland Cement Co.* v. *Commissioner,* 69 Fed. (2d) 676, 681; *Sunset Scavenger Co.* v. *Helvering,* 84 Fed. (2d) 453; *Mrs. William P. Kyne,* 35 B. T. A. 202.

*Decision will be entered under Rule 50.*