MAJESTIC OIL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96380.   Promulgated September 3, 1940

*George E. H. Goodner, Esq.*, for the petitioner.
*Arthur L. Murray, Esq.*, for the respondent.

OPINION.

SMITH: 1. *Depletion deduction.*—In its income tax return for 1935 petitioner reported a net income of $10,531.83. This was after the deduction from gross income of a depletion deduction of $13,213.10. The respondent disallowed the deduction of the claimed depletion allowance in the determination of the deficiency and determined a net income of $29,886.41. In his deficiency notice he stated:

(g) You deducted in your return depletion in an amount of $13,213.10, whereas no depletion is allowable as shown by the following computation:

| | |
|---|---:|
| Regular oil sales | $50, 859. 19 |
| Less payments in oil (item i herein) | 24, 832. 38 |
| Corrected oil sales | $26, 026. 81 |
| Expenses | 37, 376. 33 |
| Net income | None |

Article 23 (m)—4, Regulations 86.

\*     \*     \*     \*     \*     \*     \*

(i) Royalties paid in oil, pursuant to lease agreement with Shell Oil Company, constitute allowable deductions from your gross income in the amount of $24,832.38.

Section 23 of the Revenue Act of 1934 provides in part:

In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(m) DEPLETION.—In the case of \* \* \* oil and gas wells, \* \* \* a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. \* \* \*

Section 114 (b) of the same revenue act provides in part:

(b) BASIS FOR DEPLETION.—

\*     \*     \*     \*     \*     \*     \*

(3) PERCENTAGE DEPLETION FOR OIL AND GAS WELLS.—In the case of oil and gas wells the allowance for depletion under section 23 (m) shall be 27½ per centum of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance under section 23 (m) be less than it would be if computed without reference to this paragraph.

It is the respondent's position that the $63,500 received by the petitioner from Royalty during 1935 was not "income from the property" within the meaning of section 114 (b) of the Revenue Act of 1934; that the petitioner sold an economic interest in its lease with Shell to Royalty, and that under the decision of the Supreme Court in *Thomas* v. *Perkins*, 301 U. S. 655, the petitioner is not entitled to depletion in respect of the $63,500 received from the sale of such economic interest.

The facts in this case are analogous to those in *Ortiz Oil Co.*, 37 B. T. A. 656; affd. (C. C. A., 5th Cir.), 102 Fed. (2d) 508. In 1932 the Ortiz Oil Co. entered into contracts with three individuals whereby they furnished certain sums of money to the Ortiz Oil Co. for the purchase and development of oil and gas mining leases, on condition that it "pay and account" to them for specified proportions of the mineral production "if, as and when produced, saved and sold." We held that the rights of the respective parties each constituted an economic interest in the oil production, and that the Ortiz Oil Co.'s gross income for the taxable year included only the portion of the proceeds from oil sales for which it was not required to account to the other parties; that the $154,000 which the company received from Westbrook and Thompson in payment of $350,000 oil payment

thereafter to be made to Westbrook and Thompson was income of the Ortiz Oil Co. for the year 1932 as sale of a part of its properties, and that if the Ortiz Oil Co. were to reduce this $154,000 it would not be by way of depletion but by way of an allocated part of the cost of the original leasehold. We said:

* * * Proceeds from sales of production, therefore, constituted income to Westbrook and Thompson to the extent of the proportion received by them, and the balance only constituted gross income to petitioner. *Thomas* v. *Perkins*, 301 U. S. 655; *Commissioner* v. *Elliott Petroleum Co.*, 82 Fed. (2d) 193; *Commissioner* v. *Fleming*, 82 Fed. (2d) 324; *Commissioner* v. *Williams*, 82 Fed. (2d) 328. Petitioner is entitled to a deduction for depletion computed on the basis only of the income received by it as its portion of the production in the taxable year. *Palmer* v. *Bender*, 287 U. S. 551. It is not entitled to allowance for depletion on the proceeds of the sale to Westbrook and Thompson. Cf. *Commissioner* v. *Fleming, supra*, which affirmed 31 B. T. A. 623; *Darby-Lynde Co.* v. *Alexander*, 51 Fed. (2d) 56; and *Lester W. Fritz*, 28 B. T. A. 408.

The petitioner attempts to distinguish the *Ortiz Oil Co.* case from the instant proceeding and says:

* * * The case [*Ortiz Oil Co.*] involved two contracts which the Board stated were indistinguishable as to facts and were governed by the same conclusions of law. Only parts of the contracts are quoted in the Board's opinion. In the *Staley* contract (quoted on page 661), it appears that Staley was given "an undivided one half of all oil and/or gas produced, saved and sold from the following described tract of land * * * together with an *undivided one half interest in and to the said oil and gas leases and leasehold estates* thereupon." The *quoted* portions of the Westbrook and Thompson contract do not disclose that the lease was assigned to them, but since the Board stated that there was no material difference between the two contracts, it may be assumed that the unquoted part of the contract provided that the lease in this instance was also assigned to Westbrook and Thompson. But the quoted portions of the contract do provide (page 659) that the agreement to pay and account to Westbrook and Thompson "for said proportions of the production from said leases and leaseholds shall constitute *covenants running with the land*." Furthermore, Ortiz Oil Company bound itself to warrant and defend forever the interests "herein obligated to the amount of said oil payment" unto the said Westbrook and Thompson. Such provisions establish the intent to convey an interest in the land. Such covenants and warranties do not appear in petitioner's contract.

The Board is of the opinion that the distinction sought to be made between the *Ortiz Oil Co.* case and the proceeding at bar is without substance. Cf. *Anderson* v. *Helvering*, 310 U. S. 404.

There is no question in this proceeding but that the $63,500 received by the petitioner in 1935 from Royalty is taxable income of the petitioner. It was not, however, from a sale of oil. The petitioner is not entitled to depletion in respect of the economic interest in the lease sold by it. We think that the respondent did not err in excluding from "income from the property" the $63,500 here in question. With the exclusion of such amount of $63,500 the petitioner

had no net income for 1935 "from the property" and hence was not entitled to any depletion deduction for that year.

2. *Depreciation allowance in respect of well drilling equipment.*— At December 31, 1930, petitioner had on hand well drilling equipment which had an undepreciated cost of $15,087.79. This equipment was not used during the years 1931, 1932, and 1933, but was in storage. The petitioner contends that this well drilling equipment suffered no depreciation during those years. The testimony is to the effect, however, that there was an obsolescence of this equipment of from 5 to 10 percent per year. The parties have stipulated relative to this point as follows:

* * * is is agreed that the undepreciated balance or unrecovered cost of said drilling equipment as per the books as of December 31, 1930 was $15,087.79, and that a reasonable depreciation rate on that equipment was 25 percent per year.

Upon the basis of this stipulation the respondent contends that the drilling equipment that was on hand at December 31, 1930, was fully depreciated prior to 1935 and that, even though the 25 percent annual rate was intended to apply only while the drilling equipment was in use, the facts show that the obsolescence deduction based upon original cost would show that the drilling equipment was fully depreciated at the end of 1934.

We sustain the respondent's contention upon this point.

There is no question between the parties but that the petitioner is entitled to some depreciation allowance in 1935 in respect of purchases of drilling equipment during the years 1934 and 1935. The respondent computed the depreciation allowance at $1,008.85. We are of the opinion, however, from the evidence, that a rate of 25 percent per year is reasonable and that the equipment purchased in 1935 should be considered as having been in use for a period of only six months. Upon this basis the correct depreciation allowance on drilling equipment for 1935 is $1,257.94.

3. *Depreciation allowance in respect of San Joaquin lease equipment.*—In the determination of the deficiency the respondent determined a depreciation allowance of $4,745.97 in respect of this equipment for 1935. On brief he admits that the depreciation allowance is in a greater amount. Both parties are agreed that the depreciation allowance for 1935 should be computed upon units of production. During 1935 it was determined that the total amount of recoverable oil from the San Joaquin lease was 750,000 barrels, 94,959 of which were produced in 1934 and 331,654 barrels in 1935. The total cost of lease equipment at December 31, 1934, was $52,637.01. The salvage value of the lease equipment was stipulated to be 10 percent of the original cost. As we understand the respondent's argu-

ment, it is that a reasonable allowance for depreciation for 1935 is $\frac{331,654}{750,000}$ of the cost of the lease equipment to be recovered through depreciation allowances. The petitioner contends, however, that the allowance should be $\frac{331,654}{655,041}$, the denominator representing the oil reserves on January 1, 1935, and that the depreciation of $747 taken on the lease equipment in 1934 is not to be affected by the fact that in 1935, pursuant to an agreement of the parties, the depreciation allowance for 1935 and subsequent years is to be taken on units of production.

We are of the opinion that the correct depreciation allowance for lease equipment for 1935 should be computed as follows:

| | |
|---|---:|
| Total cost of equipment | $52,637.01 |
| Less equipment in well No. 2 abandoned in 1935 | 8,437.86 |
| | 44,199.15 |
| Less salvage value of 10% | 4,419.92 |
| Net depreciable cost | 39,779.23 |
| Less 1934 depreciation | 747.00 |
| | 39,032.23 |
| Depreciation allowance on 1935 production $\frac{331,654}{655,041}$ of $39,032.23 | 19,762.43 |

We therefore hold that a reasonable allowance for the depreciation deduction on lease equipment for 1935 is $19,762.43.

4. The final question for consideration is whether the petitioner is entitled to deduct from gross income of 1935 the cost of casing, etc., which was lost in well No. 2, which became valueless to the petitioner in 1935. The respondent contends that the petitioner is not entitled to the deduction of this loss for the reason that it did not in 1935 notify the California authorities that it had abandoned well No. 2 and did not comply with the California statutes, which require that in the case of the abandonment of a well it must be cemented so as to prevent the penetration of water into oil sands. In reply to this argument the petitioner points out that the loss was actually sustained by the petitioner in 1935 and that the cementing of the well as required by the California authorities would simply mean an additional investment or loss to it in the completion of the abandonment.

The evidence conclusively shows that the petitioner had a loss of $8,437.86 on its equipment in well No. 2 in 1935. The well had turned to water and was valueless. We think that the loss was sustained by

the petitioner in 1935 and that it is a legal deduction from the gross income of that year. In our determination of the depletion allowance in respect of the lease equipment above we have eliminated from the total cost of lease equipment ($52,631.01) the $8,437.86 loss sustained in 1935.

*Decision will be entered under Rule 50.*