HERNDON DRILLING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4193. Promulgated April 3, 1946.

*John E. Curran, Esq.*, and *P. W. Fitzkee, C. P. A.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

632

HILL, *Judge*: There is no controversy as to the amounts of the expenditures or as to the amount of the gross income in the taxable year attributable to the respective leaseholds herein involved.

The divergent contentions of the parties grow out of the characterization ascribed to such expenditures. As to the Stumps lease, petitioner contends that the cost of drilling well No. 1 was $7,644.01, and that this amount, plus the cash payment of $500, constitutes the consideration for the acquisition of its undivided one-half ownership in that lease. It attributes one-half of all other expenditures to its ownership in the lease under various characterizations other than capital investment. In the taxable year petitioner deducted as expense intangible drilling and development cost attributable to its one-half ownership of the lease. We are unable to determine from the record what, if any, other expenditures attributable to its one-half ownership petitioner deducted. The remaining one-half of all such other expenditures is designated by petitioner as oil payment costs, against which it claims the right to offset the proceeds of oil received under such oil payment arrangement until it has recovered the full amount of its oil payment cost. Petitioner, in effect, contends that its expenditures recoverable through oil payments constitute a loan and not the purchase price of a capital asset recoverable only through depletion allowances.

As to the Stumps lease, respondent contends that petitioner's undivided one-half ownership of the lease and its oil payment interest in the remaining undivided one-half of the lease constitute one property and that, therefore, the cost to petitioner of its leasehold interest is the cost of its ownership of an undivided one-half interest plus the cost of its oil payment interest in the other undivided one-half of the leasehold. Respondent further contends that such cost is a capital investment, recoverable only through depletion allowances.

As to the Warner lease, petitioner accounts for expenditures totaling $60,751.47. This total is made up of the itemized expenditures in connection with such lease set out in our findings of fact, less the item "advancement of cash, $250." In its amendment to petition, petitioner attaches this item to the Stumps lease. The evidence shows that this advancement was made to Branine and Holl, the assignors of the Warner lease. In its amendment to petition, petitioner allocates to leasehold cost only $2,660.15. Such amount is part of the cash payment of $14,000. The remainder of such $14,000 is allocated to equipment cost and oil payment cost in the respective amounts of $2,006.52 and $9,333.33. One-third of the cost of drilling wells Nos. 2 and 3 and one-third of the cost of cleaning out well No. 1 were allocated to development expense and two-thirds to oil payment cost. One-third

of the cost of equipping wells Nos. 2 and 3 was allocated to equipment cost and two-thirds to oil payment cost. One-third of the cost of operations was allocated to lease operating expense and two-thirds to oil payment cost.

To summarize, petitioner allocated to leasehold cost $2,660.15, to development expense $8,895.52, to equipment cost $8,559.40, to lease operating expense $135.42, and to oil payment cost $40,500.98.

Of the Warner lease expenditure, it appears that the petitioner deducted the intangible drilling cost, or the amounts designated development expense. It is apparent also, that other designated expenditures were deducted by it in its income tax return, but we are unable to determine from the record the particular items and amounts of such deductions.

Petitioner claims the right to offset oil payments against the expenditures recoverable only through such payments until it has recovered the full amount of such expenditures which it designates oil payment cost. In other words, petitioner contends, as it did in respect of the Stumps lease, that its expenditures recoverable through oil payments constitute a loan and not the purchase price of a capital asset recoverable only through depletion allowances.

Respondent contends, in respect of the Warner lease, that petitioner's undivided one-third ownership thereof and its oil payment interest in the remaining undivided two-thirds of such leasehold constitute one property and that, therefore, the cost to petitioner of this leasehold interest is the cost of its ownership of such undivided one-third interest plus the cost of its oil payment interest in the remaining undivided two-thirds of such leasehold. Respondent further contends that such cost is a capital investment, recoverable only through depletion allowances.

The basis of adjustments resulting in the deficiency, set forth in the explanatory letter accompanying the notice of deficiency, was the revenue agent's report. This report was admitted in evidence for the limited purpose only of showing the revenue agent's method of computing depletion allowances. In such report depletion was computed both on the percentage basis and the cost basis, and on the theory that both interests in each leasehold were only one property instead of two properties. In his computation of cost depletion the revenue agent assumed a certain amount of oil reserve attributable to each of the two interests in each lease and then combined the two reserves as the reserve of one property. Also, in his computation of both percentage and cost basis depletion, the revenue agent treated as the cost of leasehold (one property) the total of the costs of both interests in each leasehold.

Since the revenue agent's report was admitted in evidence only for the limited purpose above indicated, and since such report is not

competent to establish the verity of its contents, it is not evidence of the amounts of oil reserves therein attributed to each of the leasehold interests involved. Moreover, there is no evidence in the record establishing such amounts.

Since the factor expressing the rate of depletion of oil reserves is a necessary element in the computation of cost depletion allowance in respect of oil and gas in place, and since such factor can not be determined in the absence of the establishment of the amount of oil reserves, the revenue agent's method of cost depletion, computation, and the result thereof, are of no avail.

There being no basis in the facts of this case for cost depletion computation, allowable depletion must be computed on the percentage basis, and for the purposes of such computation we still have for decision the question of whether the two interests in each leasehold constitute one property or two properties.

We think that under the facts here the two interests in each lease must be held to be two properties, and we so hold. They are inherently separate and different in character. One is an outright ownership in fee of an undivided part of the leasehold estate. The other is less than a fee title interest in the remaining undivided part of the leasehold. There is no merger of the titles to the two interests. See G. C. M. 24094, 1944 C. B. 250. Cf. *Wm. H. Cree*, 47 B. T. A. 868. The undivided portions to which petitioner's two interests in each lease attached are fully as distinct as if they were in separate leaseholds. Cf. *Helvering* v. *Jewel Mining Co.*, 126 Fed. (2d) 1011; *J. T. Sneed, Jr.*, 40 B. T. A. 1136; affd., 119 Fed. (2d) 767; certiorari denied, 314 U. S. 686. Not only was it realistic and practical for petitioner to treat the two interests as separate properties, as was done in *Black Mountain Corporation*, 5 T. C. 1117, but it was under a legal obligation to so treat them in recording expenditures and income. We regard that treatment as correct under the statute and regulations governing depletion computation. Sec. 114 (b) (3), I. R. C.; sec. 19.23 (m)–1 (*i*), Regulations 103.

*Hugh Hodges Drilling Co.*, 43 B. T. A. 1045, relied upon by respondent, is distinguishable as to both issue decided and facts controlling. We held there, with respect to the Day-Roff lease and the Hembree No. 1 lease, that a working interest in a lease until specified amounts are received therefrom in oil, with a lesser working interest thereafter, is a present depletable economic interest. The issue there was depletability, and we do not regard that decision as controlling here.

Recovery of petitioner's capital expenditures in the fee interest here is not limited solely to depletion allowances, but in part may be had through deduction of intangible drilling and development costs and depreciation allowances incurred subsequent to the vesting of such fee title. In the oil payment interests here all intangible drilling and

development costs and all equipment costs attributable thereto are capital expenditures applied to the acquisition of expansions or enlargements of such oil payment interests, and they are not deductible as expense, but are recoverable only through depletion allowances. As to the in-oil payment interest, petitioner has no depreciable property ownership or interest. Hence, in respect of the in-oil payment interest, no deductions are allowable for depreciation.

It follows that, while the oil and/or gas produced from the entire leasehold estate is attributable proportionately to each of the two interests until the in-oil payment obligation shall be fully satisfied, the limitation of percentage depletion allowance to an amount not in excess of 50 percent of net income may occasion a less amount of percentage depletion allowance proportionately in respect of the fee ownership interest than in the case of the oil payment interest. It may conceivably result in no depletion allowance for the fee interest and 27½ percent depletion allowance for the oil payment interest. It is obvious that deductions for intangible drilling and development costs and for depreciation applicable in respect of the income attributable to the fee ownership of the lease are not available against the income attributable to the oil payment interest. However, a holding that the two interests in question are one property for depletion purposes would necessitate the computation of allowable depletion in violation of such announced principle.

Petitioner acquired an undivided one-half ownership in the Stumps leasehold in consideration of a cash payment of $500 plus the cost of drilling well No. 1 thereon and one-half the cost of cleaning out, testing, and equipping such well. The amount of the expenditures constituting such consideration, totaling $14,379.54, was a capital investment, recoverable only through depletion and depreciation allowances. *F. H. E. Oil Co.* v. *Commissioner*, 149 Fed. (2d) 228; *Commissioner* v. *Rowan Drilling Co.*, 130 Fed. (2d) 62; *Hardesty* v. *Commissioner*, 127 Fed. (2d) 843.

Subsequent intangible drilling and development costs in the taxable year attributable to petitioner's undivided one-half of such lease are deductible as expense under the provisions of Regulations 103, sec. 19.23 (m)–16 (a) (1).[1] *Hunt* v. *Commissioner*, 135 Fed. (2d) 697; G. C. M. 22332, 1941–1 C. B. 228. Petitioner's deduction of such items as expense was an election so to do. Regulations 103, sec. 19.23 (m)–16 (d).

---

[1] Sec. 19.23 (m)–16. *Charges to capital and to expense in the case of oil and gas wells.*— (a) Items chargeable to capital or to expense at taxpayer's option :

(1) Option with respect to intangible drilling and development costs in general : All expenditures for wages, fuel, repairs, hauling supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. *  *  *

Petitioner acquired an in-oil payment interest in the remaining undivided one-half of the Stumps lease. Such acquisition was an economic interest in the oil in place and hence a capital asset. *Palmer v. Bender*, 287 U. S. 551; *Thomas v. Perkins*, 301 U. S. 655. Its cost to petitioner is a capital investment, recoverable only through depletion allowances. *Hugh Hodges Drilling Co.*, 43 B. T. A. 1045. See G. C. M. 24,849, 5 I.R.B. 4, 1946. The measure of such cost is the total amount of all costs, expenses, and advancements which petitioner was authorized by agreement with its assignors to recover from the proceeds of oil, attributable to such undivided one-half interest in the lease.

We hold that petitioner acquired an undivided one-third ownership of the Warner lease on the date, and by virtue, of its agreement of December 9, 1941, with Branine and Holl, and an assignment of even date therewith from Branine and Holl to petitioner. We hold that petitioner acquired an in-oil payment interest in the remaining undivided two-thirds interest in the Warner lease on the date, and by virtue of, such agreement, and an assignment of even date therewith from Branine and Holl to petitioner. The cost to petitioner of its one-third ownership in such lease was $27,668.14, and the cost to it of the in-oil payment in the remaining two-thirds interest in such lease was $33,333.33. Each of the interests thus acquired was a separate capital asset and the cost of each such interest is recoverable only through depletion allowances. *F. H. E. Oil Co. v. Commissioner*, and other cases cited, *supra*.

The total payments, expenditures, and advancements made by petitioner in respect of the Warner leasehold on and prior to December 9, 1941, in the amount of $61,001.47, must be capitalized and allocated in the amounts above stated to the two capital investments above described.

*Decision will be entered under Rule 50.*